### GEORGE HAWLEY, ADMINISTRATOR *v.* JAMES D. BULLOCK.

It is well settled that deeds and instruments respecting the titles to lands executed before the passage of our registration laws should be recorded in the counties in which the lands are situated.   (Paschal's Dig., Arts. 4973, 4980–4982, Notes 1084 to 1092.)

If conveyances be not registered, they have no effect as to the interests and rights of third parties.   (Paschal's Dig., Arts. 4978, 4983, 4994, Notes 1089, 1092.)

The older conveyance is valid, and passes the title without registration, except as to subsequent purchasers for a valuable consideration paid without notice; and as to creditors, it has no effect.   (Paschal's Dig., Arts. 4978, 4983, 4994, Notes 1089, 1092.)

A subsequent purchaser must be one who has bought for a valuable consideration paid, and without notice of the former conveyance or sale.

Actual notice is when the party has knowledge of the fact.   Constructive notice is brought home to the party by the registration of the title papers, or when he is put upon inquiry by any circumstances, which, by the exercise of ordinary diligence and judgment would lead to a knowledge of the fact: such circumstances as make it the duty of the party to make inquiries.   (Paschal's Dig., Art. 4983, Note 1092.)

Possession of the premises by the owner in person, or by agent or tenant, are

sufficient circumstances to put any prudent man upon inquiry, as to the title under which he holds the premises, and it amounts to notice of the title under which the occupant holds and claims the land.

A party who claims to be a purchaser in good faith, should prove the payment of the purchase-money by other evidence than the mere recitation of payment in the deed.

Whether a lien has been lost by the failure to keep alive a judgment by the issuance of executions is a matter for the defendant in execution, and a person claiming adversely cannot avail himself of the irregularity in the sale. (Paschal's Dig., Arts. 3953, 3954, 3783, Notes 935, 936, 873.)

The inadequacy of price paid at sheriff's sale is an objection which can be made only by the injured party, who is the defendant in the execution; persons claiming as subsequent purchasers with notice cannot be heard to urge this objection.

APPEAL from Jefferson.    The case was tried before Hon. JAMES M. MAXCY, one of the district judges.

This was an action of trespass to try title and to remove clouds from title, brought by the appellee, James D. Bullock, against John Collier, the intestate of the appellant, George W. Hawley, in the district court of Jefferson county, the petition having been filed on the 16th September, 1857. The land sought to be recovered by this suit is the north half of a league originally granted to James D. Bullock, less one hundred acres, situated on the west bank of the Neches river, in Jefferson county.    Collier dying during the pendency of the suit, William Lewis became his administrator, and was made a party in his stead; but he ceasing to be administrator, George W. Hawley was appointed administrator, *de bonis non*, of the estate of Collier, and was made party defendant to this suit.    The petition averred title in the plaintiff to the land, and charged that defendant, Collier, set up a false and fraudulent claim to the same, and prayed judgment for the land, and that Collier's title be set aside and declared null and void.    An amended petition, subsequently filed, set out the boundaries of the half league sued for, and yet another amendment, filed at a later day, declared that the land embraced by the pretended titles of the defendant, and described in them, is not the identical

land which plaintiff sues for and seeks to recover. The defendant, in his answer, filed a general demurrer, a general denial, plead not guilty, and, in a special plea, set up title in himself to the land in controversy, deraigning such title from the government to himself. Defendant also plead the statute of limitation of three and five years.

The case was tried at the fall term, 1860, of the district court.

All the documentary evidence read to the jury, both by the plaintiff and defendant, was read by consent of the parties, all exceptions to the same having been waived for the purposes of the trial. The following were substantially the facts proved on the trial: The plaintiff read to the jury from the records of Jefferson county the copy of the original grant of a league of land to James W. Bullock, dated 17th January, 1835, and also a copy of a deed of conveyance from James W. Bullock to plaintiff, James D. Bullock, for the north half of the said league, which deed bears date on the 15th day of July, 1857. The plaintiff then proved by the witness, Wendling, that the plaintiff claimed the land in controversy in the year 1857; that the witness was living on the land at that time, when plaintiff came to his house asserting claim to the land, and sold witness one hundred acres of it, for which witness paid him $112 50. This witness, Wendling, upon his cross-examination, testified that he was, in 1852, put in possession of the land in controversy in this suit by John Collier, deceased, the original defendant, and that he held the same under Collier, continuously, up to 1857, when the plaintiff, Bullock, came and claimed it. Such were the only facts proved by the plaintiff. The defendant then, by the consent of plaintiff, read in evidence the following instrument in writing, viz:

1. Bond in the penalty of $1,990, executed by James W. Bullock to David Brown, dated on the 27th January, 1835, conditioned that Brown should locate the league of land to which Bullock was by law entitled, and that Bullock should

convey to him, by good title, one-half of the league, when so located, as compensation for the locating of the same.

2. A deed of conveyance executed on the 8th day of May, 1835, before Augustus Hotchkiss, judge of the first instance, by James W. Bullock to David Brown, conveying one-half the league granted to Bullock to Brown, in conformity with the stipulation of the bond, and describing the boundaries of the land so conveyed.

3. A deed of conveyance from David Brown to William K. English, conveying from the former to the latter the north half of the James W. Bullock league in Jefferson county, dated the 14th December, 1844, and recorded in Jefferson county, on the 22d August, 1849.

4. A certified copy of a judgment and execution; the judgment rendered in the district court of Nacogdoches county, on the 29th September, 1846, in favor of Almazin Houston, and against William K. English, for $2,311 68, and the execution therein issued on the 20th day of August, 1850, directed to the sheriff of Jefferson county, together with the return of the sheriff of Jefferson county upon the same.

5. A deed of conveyance from the sheriff of Jefferson county to defendant, John Collier, reciting the sale, by the former, of the north half of the James W. Bullock league under the execution, and its purchase by Collier, bearing date the 2d day of October, 1850.

6. A deed from James W. Bullock to Alexander Horton, dated 5th July, 1848, conveying to Horton the south half of the league granted to Bullock.

7. A deed from Alexander Horton to Cartwright, conveying from the former to the latter the south half of the James W. Bullock league, dated February, 1842.

George W. O'Bryan testified that the plaintiff, James D. Bullock, is the son of James W. Bullock; that he knew him in Jefferson county, in the year 1857; witness was clerk of the county court of Jefferson county; plaintiff,

Bullock, came into the clerk's office one day, when witness suggested to him that he, witness, knew of no record evidence of a conveyance from plaintiff's father for the north half of his head-right league, it being the land in controversy; plaintiff seemed to be at the first of it; witness and plaintiff then examined the records, but found no deed from James W. Bullock to Brown; plaintiff knew of Collier's claims. After this examination, plaintiff went off up north, and returned with his deed from his father to the land in controversy; plaintiff had but little means known to witness.

Such was the testimony adduced in the case. There were a verdict and judgment for the plaintiff for the land claimed. The defendant moved the court for a new trial; which motion was overruled. The defendant appealed, and assigned as error, 1, The charge of the court to the jury; 2, The refusal of the court to give the charges asked by defendant; 3, The refusal to grant defendant a new trial; 4, That the verdict was against law and evidence; 5, That portion of the charge of the court respecting the effect of a sheriff's sale was especially erroneous, and well calculated to mislead the jury, and was not justified either by the law or facts of the case.

The charge of the court sets out with the declaration, that the legal effect of the documentary evidence before the jury is, that the title is in the plaintiff, and unless the jury believe that the title to the north half of James W. Bullock's head-right league of land passed out of James W. Bullock, the grantor of the plaintiff, by the sheriff's sale and deed, valid in law, to John Collier, they will find for the plaintiff. The succeeding clause of the charge is in these words: "But if you believe from the evidence that the sheriff's levy and sale are valid in law of the whole league, without any other proof to identify the sheriff's levy and sale of the north half of said league, you will find for the plaintiff." The jury were further

instructed, that in order to make the sheriff's sale to Collier valid in law, they must. be satisfied from the evidence that the judgment in favor of Houston and against English had been kept alive by the regular issuance of executions upon it, and had not been allowed to become dormant.

The jury were also charged in reference to the right of the plaintiff as an innocent purchaser for a valuable consideration and without notice.

*H. C. Pedigo*, for the appellant, recapitulated the facts, and argued that the instructions were against the rulings in Sydnor v. Roberts, 13 Tex., 598; Watkins v. Edwards, 23 Tex., 443. He said, that the grantee, James W. Bullock, having conveyed the whole land, there remained nothing to convey to the son; and that the purchase of the son was with notice, without consideration, and without good faith.

No brief for the appellee has been furnished to the *Reporter*.

SMITH, J.—Both parties claim the land in controversy from James W. Bullock, to whom it was granted in January, 1835. The plaintiff below claims by deed to him from the grantee, dated 15th July, 1857. And the defendant's intestate, John Collier, claims under a deed executed by the grantee to David Brown, on the 8th day of May, 1835, (never duly registered,) and by mesne conveyances from him, duly registered, one in 1849 and one in 1850.

The plaintiff claims by title subsequent to that of the defendant; and the main question in the case appears to be, whether the plaintiff can hold, as a subsequent purchaser for a valuable consideration, and without notice of the prior conveyance from the grantee.

It appears to be well settled, that "deeds and indorsements, respecting the title to lands, executed before the

passage of our registration laws, should be recorded in the counties in which they lie." (Hart. Dig., Arts. 2752, 2754, 2755, and 2758;) [Paschal's Dig., Arts. 4973, 4981, 4982, Notes 1084 to 1092.] And if not registered, they will meet with the consequences prescribed by the law, and have no effect as to the "interests and rights of third parties." (Hart. Dig., Arts. 2757, 2775, 2777; Gilbeau v. Mays, 15 Tex., 413; Paschal v. Perez, 7 Tex., 348; Watson v. Chalk, 11 Tex., 89; Lambert v. Weir, decided at Galveston, Februry 26, 1864,) [27 Tex., 359; Paschal's Dig., Arts. 4978, 4983, 4994, Notes 1089, 1092.]

The elder conveyance is valid, and passes the title without registration, except as to subsequent purchasers, for a valuable consideration paid, and without notice, and creditors; and, as respects them, it has no effect. (Hart. Dig., Arts. 2757, 2775, 2777;) [Paschal's Dig., Arts. 4978, 4983, 4994, Note 1089.]

To entitle a subsequent purchaser to the benefit of this position, it must be made to appear that he is a purchaser for a valuable consideration paid, and without notice of the former conveyance or sale. Actual notice is when the party has knowledge of the fact. Constructive notice is brought home to the party by the registration of the title papers, and is also considered as affected with constructive notice, when put upon inquiry by any circumstance that would, by the exercise of ordinary diligence and judgment, lead to a knowledge of the fact, and when it becomes the duty of the party, as in case of a purchaser, to make the inquiry. (17 Tex., 149, 150.) What will be sufficient to put a party upon inquiry appears to be difficult and uncertain in its application in some instances.

Loose and vague rumors from strangers are not sufficient to put a party upon inquiry. It has, however, been settled by repeated adjudications, that possession of the premises by the owner in person, or by agent or tenant, will be considered a sufficient circumstance to put any prudent man

upon inquiry as to the title under which he holds the possession of the premises, and will, in contemplation of law, amount to notice of the title under which the occupant holds and claims the land.

In this case it appears that before the plaintiff purchased the land, he was informed, by the clerk of the county court of Jefferson county, that there was no conveyance on record from his father, the grantee, for the north half of the league of land; and an examination of the records of the office was then made by them both, and none from him was found. But the clerk testifies, that he was "satisfied that the plaintiff saw or knew of Collier's claim." It was then recorded in that office. It may be plausibly contended, that this direct notice of Collier's title was sufficient to put him upon inquiry, and, as a prudent man, he would have gone to Collier and learned the nature of his claim to the land, before he made a purchase from his father of the same land claimed by Collier, which fact was recited in this deed, called to his attention, or of which he had knowledge.

It appears that Collier, in 1852, placed one Wendling in possession of the premises in suit, and he continued in possession under him until he purchased of the plaintiff one hundred acres in 1857. The fact of possession of the premises by Collier, in person, agent, or tenant, was sufficient to put the plaintiff upon inquiry as to his title, and it amounts, in contemplation of law, to constructive notice, as effectual as if all his title papers had been registered in the proper county. (Watkins v. Edwards, 23 Tex., 443.)

The court refused to instruct the jury, at the instance of the defendant, that if the plaintiff had notice of the claim of Collier, together with the fact that he had a tenant in possession, he could not be considered an innocent purchaser without notice. In this we are of opinion there was error well calculated to mislead the jury.

There was no evidence adduced to prove that the plain-

tiff had in fact paid a valuable consideration for the land. This he should have proved otherwise than by the recitals in his deed, (23 Tex., 447,) and the court erred in refusing thus to instruct the jury.

It appears that the deed from James W. Bullock, the grantee of the league, to David Brown, of the 8th of May, 1835, never has been properly registered; that Brown, in 1844, conveyed the land to William K. English, and this deed was placed on record in 1849; that on the 22d August, 1846, judgment for $2,311 68 was rendered in the district court of Nacogdoches county, in favor of Almazin Houston, and against English, upon which *pluries* execution was issued to Jefferson county, on the 20th August, 1850, and was levied upon this half league, and sold to the defendant, John Collier, for $10, and was made over to him on the 2d October, 1850, and then placed on record.

The court, in effect, charged the jury, that unless execution be issued regularly upon a judgment from term to term it becomes dormant, and none could be issued upon it without reviving the judgment, and if the defendant derived a title under a sheriff's sale, made under an execution based upon a dormant judgment, his defense fails, and they must find for the plaintiff. This we understand not to be the law. A failure to issue executions from term to term, or until after the expiration of twelve months from the rendition of the judgment, does not vitiate and render the execution void, but makes it voidable only, and at the instance of the defendant in the execution; and, if not superseded by him, and the sale be made under it, the title will pass to the purchaser at the sale. (Sydnor v. Roberts, 13 Tex., 598; 1 Cow., 711, 734; 2 Pet., 157.)

The execution under which this sale was made was a *pluries*, as appears from its face, or an *alias pluries*, and the fact may have been that executions had been regularly issued upon the judgment.

The instruction of the court upon the effect of the sheriff's

sale was not correct in principle, and was well calculated to mislead the jury in this respect.

The fact that Collier purchased the half league of land for $10 is a circumstance that might go to show unfairness or fraud in the sheriff's sale, perhaps. But that is an objection to the sale that can only be made by the injured party, the defendant in the execution, English; and, if he makes no objection to the sale on that account, it is not perceived on what grounds the plaintiff can be heard to raise it, when it does not appear that he has been in the least affected by the fraud, if any has been committed, and claims in opposition to both English and Collier; and we think the court might well have charged the jury, that inadequacy of bid at the sheriff's sale cannot be relied upon by the plaintiff in this suit.

There may be some doubt arising from the description of the part of the league intended to be conveyed by the deed to Brown of the 8th May, 1835, whether it conveys an undivided half of the whole league, or the north half, adjoining lands of Brown. Without expressing any decided opinion, we are inclined to believe the north half was intended to be conveyed, and this view is fortified by the fact of a subsequent sale by the grantee of the south half of the league.

The judgment is reversed and cause remanded for further proceedings, in conformity with this opinion.

REVERSED AND REMANDED.