B. W. MULLINS, GUARDIAN, &c., v. W. S. WIMBERLY.

1. POSSESSION AS NOTICE.—Purchasers are chargeable with notice of the title or claim under which the land purchased is held or claimed by the tenant or occupant in possession.

2. SAME—EXCEPTIONS TO THE RULE.—The exceptions to the above rule, on sound principles, must be limited to cases where the tenant

is knowingly in default in putting his title upon record, or has voluntarily given assistance in misleading the purchaser.

3. CASE APPROVED.—Watkins *v.* Edwards, 23 Tex., 443, approved.

4. SEE FACTS held to be within the rule given above.

5. FACT CASE — MISTAKE.—See facts where it was evident that a mistake was made in the description of land which was tendered as security for a loan, the mortgage being, by mistake, upon lands not tendered as security.

ERROR from Smith.   Tried below before the Hon. M. H. Bonner.

October 30, 1868, Warren Williams and N. S. Williams bought of J. B. Lollande a tract of six hundred and thirteen acres in a square and part of the Thomas Quevado seven-league grant.   The tract was divided by Copperas creek, running from north to south and near the middle.   At the purchase, there were improvements on the east side of Copperas creek on the land.   There the purchasers both lived for awhile.   In 1876 they made a division, by which Warren Williams took that part east of Copperas creek and N. S. Williams that part west of the creek.   From the partition possession was taken of that part west of the creek by N. S. Williams.

July 17, 1869, partition deeds were exchanged by the parties; but, by mistake, each deed called for the wrong tract. N. S. Williams conveyed the west, occupied by himself, and Warren Williams conveyed his home on the east side.   The deeds were placed on record and the mistake was not noticed in the lifetime of either.

August 1, 1873, Warren Williams borrowed $540 of William S. Wimberly, at twenty-five per cent. per annum interest, proposing to give a deed of trust on his land.   The trust deed was prepared and the field-notes taken from the record so as to include the N. S. Williams land, lying west of the creek.

N. S. Williams married in 1869, and, with his family, resided on the west part at about three-quarters of a mile from Warren Williams, on the east side.

In 1872 N. S. Williams and his wife died. Warren Williams administered on their estate, and inventoried the land on the west side as belonging to the estate.

Warren Williams died before his loan from Wimberly was paid. Wimberly probated his claim and obtained an order to sell the land described in his deed of trust. The land was sold and bought in by plaintiff, who, on August 25, 1875, brought trespass to try title against B. W. Mullins, guardian of D. B. Williams and L. E. Williams, children of N. S. Williams, and against A. J. Glaze.

There is no evidence that Wimberly, when he loaned the money and took the deed of trust, had any notice of the facts, except such as the record of the deeds and the possession of the tracts respectively gave, the west part being held by Mullins' guardian and the east half being in possession of Warren Williams.

*Sawnie Robertson,* for plaintiff in error.

I. Possession of real estate is constructive notice of the title of the possessor. (Watkins *v.* Edwards, 23 Tex., 443; 2 Lead. Cas. in Eq., 180, 182, and authorities cited.)

II. This principle applies with full force to the possession of the grantor. (Grimstone *v.* Carter, 3 Paige Ch., 421; Russell *v.* Sweezey, 22 Mich., 236; Hood *v.* Fahnestock, 1 Barr, 470; Roberts *v.* Anderson, 3 Johns. Ch., 371; Randall *v.* Silverthorn, 4 Barr, 173; Pell *v.* McElroy, 36 Cal., 268; McKecknie *v.* Hoskins, 23 Maine, 230; Webster *v.* Maddox, 6 Maine, 256; Jaques *v.* Weeks, 7 Watts, 261, 287; Wright *v.* Bates, 13 Vt., 341; 2 Lead. Cas. in Eq., 184.)

III. When parties are negotiating, and it afterwards appears that one was contracting for one thing and the other for another, and that their minds did not agree as to the subject-matter, then there would be no contract. (Kyle *v.* Kavanagh, 4 Am. Rep., 562; Spurr *v.* Benedict, 99 Mass., 463.)

460 Mullins v. Wimberly. [Tyler Term,

*Jones & Henry,* for defendant in error.—We understand the main point in the case to be the proposition, that defendant Mullins' possession of the land in controversy was, of itself, notice to plaintiff of his vendor's want of title.

The evidence shows that N. L. Williams, defendant's intestate, had made to Warren Williams, plaintiff's vendor, a deed for the land in controversy; had himself made the acknowledgment on which it was duly recorded years before it was mortgaged to plaintiff by Warren Williams. It shows also that N. L. Williams had received and placed on record a deed in exchange from Warren Williams perfectly consistent with the deed to Warren Williams; and if there was in fact any mistake, the terms of his own deed would call the attention of himself, but not that of a stranger, to it. (Robertson *v.* Smith, 11 Tex., 217; Horan *v.* Long, 11 Tex., 233.) The law charges him with notice of the recitals of his own deed, and it may, we think, be fairly presumed that the deed was written as intended, or that it was afterwards willingly acquiesced in and ratified. There is no evidence that a mistake was made in the act of drawing the deed. That is only an inference arising from the verbal agreement to divide and from the possession and acts of the parties afterwards. It is not contended that plaintiff had actual notice of a mistake. On the contrary, the evidence is positive that he did not. The proof is equally clear that he trusted to, and if he does not now own the land was misled by the record of the deed to Warren Williams, to which he was referred, and which he had examined and on which he relied and acted. It is a principle of law, that if one makes a representation to another about a matter of interest, on which he acts, the person making it is bound by it. (1 Greenl. on Ev., sec. 207.)

Here N. L. Williams had deliberately and in the most solemn form, through said deed, said to plaintiff that the land in controversy belonged to Warren Williams, and the statement was believed and acted on by plaintiff. It is in proof that defendant's intestate first, and defendant himself

afterwards, was in possession of this land, claiming the title; and the evidence fairly shows, we think, that, so far as Warren Williams' acts and declarations went, he recognized this claim of title; but none of this is brought home to the plaintiff. On the contrary, it is shown that he was altogether ignorant of everything.

Our position is, that whatever may be the effect of possession in certain cases, the doctrine has no application here.

Where there is no record, possession may be notice. We do not understand that possession can contradict and nullify a record.

Some consideration on this point is due, we think, to the condition of this State and the usual custom of buying and selling land.

We think this court may take notice of the fact that large portions of the land bought and sold lie in thickly-settled counties, difficult of access, and the dealings often between parties each of whom lives remote from the land, and who have no actual knowledge of its condition. Practically, the records in this State are universally relied on for the condition of the title. If the evidence of the records is in every case to be made to yield to and depend upon the actual condition of the land, their usefulness will, to say the least, be much diminished and the public interests seriously affected.

As against *bona-fide* purchasers for a valuable consideration without notice, courts of equity will grant no relief to correct a mistake. (Story's Eq. Jur., sec. 165; Kesler v. Zimmerschitte, 1 Tex., 56.)

In a note on page 245 of Kerr on Fraud and Mistake it is said: "In this country, where a registration of deeds as matter of title is universally provided for, courts of equity will not enlarge the doctrine of constructive notice, nor follow English cases, except with cautious attention to their application to the circumstances of our country and to the structure of our laws." (Flagg v. Mann, 2 Sumn., 486.) "Possession is not evidence of notice, unless that possession was

known to the purchaser; nor can it be conclusive if it be known, and therefore is not equivalent to recording. It is at most implied notice, which may be rebutted." (See same note, referring to Harris *v.* Arnold, 1 R. I., 126; Vaughan *v.* Tracy, 22 Mo., 415; Hewes *v.* Wiswall, 8 Greenl., 94; Emmons *v.* Murray, 16 N. H., 385.) "The notice is merely an inference. It may not arise in some cases, and may be repelled in others. Like all rules of circumstantial evidence, it must be governed by the particular circumstances of each case." (Id.)

In a note on page 166 of the third American edition of Leading Cases in. Equity it is said: "It has also been held, that where a party has put a conveyance to another on record he will be estopped from relying on his continuance in posses-- sion as notice of a resulting trust to himself; for under such circumstances the purchaser is not bound to go beyond the declarations of the parties as publicly recorded, and inquire into the actual relations subsisting between them,"—referring to Scott *v.* Gallagher, 14 S. & R., 389; Wood *v.* Farmere, 7 Watts, 382; Newhall *v.* Pierce, 5 Pick., 450.)

*Stephen Reaves*, also for defendant in error.

I. One tenant in common can maintain an action in tres- pass to try title. (Croft *v.* Rains, 10 Tex., 523; Grassmeyer *v.* Beeson, 18 Tex., 753; Watrous *v.* McGrew, 16 Tex., 511; Alexander *v.* Gilliam, 39 Tex., 236.)

II. Equity will not relieve as to a mistake of fact, unless application be made within a reasonable time. (11 Ga., 100; 12 Ga., 282; 13 Ga., 89; 15 Ga., 103; 22 Ga., 37; 15 Beav., 151.)

III. One asking relief against a mistake must offer to do equity, and the parties must be placed *in statu quo.* (Adams'. Eq., 378, 379; Okill *v.* Whittaker, 2 Phil., 338; Coppedge *v.* Threadgill, 3 Sneed, 577; Skinner *v.* White, 17 Johns., 357; Clay *v.* Turner, 3 Bibb, 52; Scott *v.* Gallagher, 14 S. & R., 334.)

IV. It is insisted by plaintiff in error that the possession of N. L. Williams during his lifetime and the possession of Mullins, his representative, after his death, was notice of the mistake, and Wimberly was affected with notice by such possession. This doctrine, even if correct, is subject to many exceptions, and, we insist, does not affect the result in this case. (Scott v. Gallagher, 14 S. & R., 334; Plumer v. Robertson, 6 S. & R., 184; Newhall v. Pierce, 5 Pick., 451; Wethered v. Boon, 17 Tex., 147.)

MOORE, CHIEF JUSTICE.—That there was a mistake in the deed from Nicholas L. to Warren Williams is beyond dispute. And if appellee is chargeable with actual or constructive notice of this mistake when he took from Warren Williams the deed of trust through which he derives the title upon which he brings this action, it cannot be denied that the judgment against appellant must be reversed. It is not pretended that the mistake in the deed had been in any way corrected prior to that time, or that notice of it could have been obtained by examining the records. On the contrary, the registration of the deed from Nicholas L. Williams, if it had been his only source of information, only served to mislead and deceive appellant, if he had examined it. Nor can it be claimed that there is anything whatever in the transcript to induce the belief that appellee knew of the mistake in the deed when he loaned the money to Warren Williams, to secure the repayment of which the trust deed was given. On the contrary, he unquestionably, in fact, knew nothing whatever about it. If, then, he is chargeable with notice, it is because the law imputes to him knowledge of facts from which, with proper diligence, he might have informed himself of the mistake.

Unquestionably, if such is the case, he must be held to be affected with notice of the mistake, although he acted in the utmost good faith and had not in truth the least suspicion of it.

Does it, then, appear from the evidence in the record that appellant is chargeable with the knowledge of facts from which, by proper investigation, he would have learned of the mistake in the deed to Warren Williams?

It is not denied that Nicholas L. Williams was in the actual occupancy and possession of the land described in his deed to Warren Williams, holding and claiming it in his own right from the date of his deed to Warren to his death; that after his death Warren, as administrator *pro tem.*, took possession of and inventoried it as property of his estate, and that the land was in the actual occupancy of appellant as the regular administrator of the estate of Nicholas L. Williams, or as the guardian of his children, or that of tenants holding for or in his right at the date of the trust deed from Warren Williams to appellee. It is certainly a reasonable inference, as well as a well-recognized principle of law, that parties purchasing or loaning money on land are presumed to take sufficient interest to inform themselves, to some extent at least, in regard to its condition and situation, and whether it is occupied or unoccupied; and it has long been settled by this court that purchasers are chargeable with notice of the title or claim under which it is held or claimed by the tenant or occupant in possession when they buy. (Watkins *v.* Edwards, 23 Tex., 443.) "It is not to be presumed," says the court, quoting from the case of Pritchard *v.* Brown, 4 N. H., 397, "that any man who wishes to purchase land honestly will buy without knowing what are the claims of a person in open possession of it."

It certainly cannot be denied that the language of the court in this case is sufficiently broad, if subject to no qualification or exception, to embrace and control this case. It is insisted, however, by appellee's counsel, that, as no more was called for by the facts, the court intended to announce, by its opinion in the case of Watkins *v.* Edwards, merely a general rule, to which there are, as they say, exceptions as well established as the rule itself,—one of which, it is insisted, is, that when the vendor remains in possession, a purchaser from his

vendee is not chargeable by reason of such possession with notice of a title or claim by the vendor adverse to or in conflict with his deed; but the purchaser is authorized to presume that the vendor holds in subordination to the title of his vendee. In support of this proposition we are referred to the cases of Newhall *v.* Pierce, 5 Pick., 450; Wood *v.* Farmere, 7 Watts, 382; Scott *v.* Gallagher, 14 S. & R., 333.

In the first of these cases it is held that notice to creditors of the existence of a bond from the grantee to reconvey, on the payment of a sum of money within a given time, is not to be inferred from the facts of the grantor continuing in possession after the deed given by him had been recorded. The court, however, put their decision upon the express requirement of the registration statutes. The second case holds "that a purchaser of land is not affected with constructive notice of anything which does not lie within the course of his title, or is not connected with it; he is not, therefore, presumed to know of the registry of a will containing a devise of land which he claims by title paramount;"—and that while possession of the land is notice of the possessor's title, the registry by him of a particular title will restrict the generality of the notice from possession. We fail to see the applicability of the points ruled in these cases to the proposition in support of which they are cited. But the case of Scott *v.* Gallagher, it must be admitted, seems apparently more nearly in point. The court there says: "The *bona-fide* purchaser of the legal title is not affected by a secret trust, of which he has not direct, express, and positive notice. The possession of a *cestui qui trust*, and the exercise by him of every act of ownership, is not such notice." The decision seems to be based upon the ground that it is not the duty of the purchaser from a party holding the legal title to call upon the person in possession of the land to inquire whether he has a secret agreement with the owner of the legal title; but if there is such an "agreement it is the duty of the tenant in possession to spread it upon the records of the county."

This reasoning of the court, it might be held, warrants the conclusion that the rule announced was only regarded as applicable where the tenant in possession holds by title which might and should be spread upon record. And so it seems to have been directly ruled by the same learned court in which this case was decided in the subsequent case of Randall *v.* Silverthorn, 4 Barr, 173. And if it is admitted to be a general rule that the possession of the tenant affects the purchaser with notice of his title, we think the exceptions to it, on sound principles, must be limited to cases 'where the tenant is knowingly in default in putting this title upon record, or has voluntarily given, to some extent, assistance in misleading the purchaser. Certainly such was not the case here. The legal title was in Warren Williams solely by accident and mistake, of which all parties were in total ignorance until after appellee had loaned his money and taken the trust deed. The title of appellant, therefore, could not have been spread upon the record; and we are clearly of the opinion that the exceptions to the rule recognized in Watkins *v.* Edwards—if, indeed, there are exceptions to it—do not apply to such cases as this. It may be well questioned, however, whether there is any such exception to the general rule in this State as that insisted on by appellee. (Mann *v.* Falcon, 25 Tex., 271; Hood *v.* Fahnestock, 1 Barr, 470; Grimstone *v.* Carter, 3 Paige, 421; Russell *v.* Sweezey, 22 Mich., 235.)

Appellee being chargeable with notice of appellant's title, if he had made inquiry could not have failed to learn that there was a mistake in the deed from Nicholas L. Williams to Warren Williams, and that the land really intended to be conveyed by this deed lay on the east instead of the west side of Copperas branch. Being chargeable with notice of this fact, he got by the deed of trust no greater or better title than Warren Williams, who, on the facts exhibited in the record, certainly could not, at the date of the trust deed, have maintained an action against his brother's estate and recovered from it this land.

There is another view of the case which would lead to the same conclusion. Appellee did not, in fact, loan his money because he supposed he was getting security on the land described in the deed. His own testimony shows that the tract of land to which the parties referred when the loan was being negotiated was land belonging to Warren Williams, and upon which he had lived. The loan was agreed upon before any reference was made to the deed. It was not referred to that appellee might be better informed as to the property proposed as security for the loan, for he was fully satisfied as to this, but merely for the purpose of getting, as the parties supposed, the correct description of Warren Williams' land, upon which the money was loaned. There was, therefore, the same mistake in the trust deed as in the deed from Nicholas L. to Warren Williams. The trust deed, through mistake, did not set forth the contract actually made by the parties to it. The court, by its decree foreclosing the deed as written, executed an agreement to which neither of the parties ever assented, and one, indeed, which had never been contemplated by either of them. When appellee discovered the mistake in the deeds, he should have brought suit, citing all the parties interested, for the correction of the mistake and enforcement of the lien against the land upon which it was supposed by the parties that it had been given.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Justice BONNER did not sit in this case.]