**HOUSTON OIL CO. OF TEXAS v. CHOATE et al. (No. 235–3419.)**

(Commission of Appeals of Texas, Section A. June 15, 1921.)

1. **Husband and wife ⊕⟳267(8)—Land held community property as to purchaser for value without notice.**

Where the owner of real estate conveyed it to a third party for the purpose of having the third party convey it to the owner's wife as her separate property, which the third party did, but the deed showed on its face that the grantee was the wife of the original owner, and contained no recitals that the consideration was paid out of her separate estate, nor that the land was to be her separate property, such land became the wife's separate property as between herself and husband, their privies in blood, and purchasers without value or with notice, but as to purchasers for value without notice it should be treated as community property.

2. **Husband and wife ⊕⟳265—Interest of husband in wife's real estate held to be equitable only.**

Where the legal title to real estate was in a wife as her separate property, while the land was prima facie community property, the title vested in the husband as a member of the community was equitable only.

3. **Husband and wife ⊕⟳267(8)—Rights of purchasers at execution sale of land which is prima facie community property stated.**

Where land is in fact the separate property of a wife, but is prima facie community property, purchasers at an execution sale of such property, if without notice of the facts, take the same title that they would have taken if the property had been community property in fact.

4. **Husband and wife ⊕⟳267(8)—Rights of purchaser of community property at execution sale stated.**

Since, under Act March 13, 1848 (Acts 2d Leg. c. 79; 3 Gammel's Laws, p. 77), and Act Aug. 26, 1856 (Acts 5th Leg. c. 123; 4 Gammel's Laws p. 469), community property was expressly made liable for the debts of both husband and wife contracted during marriage, purchasers of such property at an execution sale in 1873 acquired all the right, title, and

interest that the community or either member of it had therein, as no other holding would fully effectuate the clear purpose of the statutes.

5. **Trespass to try title ⊕⟳38(1)—The party who has the burden of proof must furnish evidence to overcome opponent's prima facie case.**

Where plaintiffs, defendants in a cross-action of trespass to try title, made out a prima facie case of outstanding legal title, it was necessary for the interveners, who had the burden of proof, in order to recover to meet such prima facie case by countervailing proof.

6. **Adverse possession ⊕⟳33—Evidence of notoriety of claim held admissible as bearing on notice.**

Where interveners claimed title to land by adverse possession, evidence that everybody in the country around knew it was the land of their predecessor in title was admissible and pertinent on the issue of notice.

7. **Appeal and error ⊕⟳930(3)—Court will be presumed to have found facts necessary to support judgment where authorized.**

Where the evidence authorized the trial court to find that the separate ownership of land by a wife was open and notorious in the community, and that a man living on the land was avowedly her tenant, and holding under her in her separate right, and that inquiry of him would have informed the purchaser that the property was her separate property, the court will be presumed, in a case submitted on special issues, under Rev. St. art. 1985, when necessary to support the judgment, to have found such facts.

8. **Adverse possession ⊕⟳31—Possession of tenant is notice of rights of landlord.**

Where land was occupied by one who was avowedly the tenant of the owner, the possession of such tenant was equivalent to possession by the owner on the question of notice to third parties of said owner's rights.

9. **Adverse possession ⊕⟳115(3)—Evidence as to notice held to justify refusal of peremptory instruction.**

Where the evidence showed that a man occupied certain land as the avowed tenant of a married woman who held the land as her separate property, and the separate ownership of said land was open and notorious in the community, there was evidence tending to show notice of adverse possession, and a peremptory instruction was properly refused.

10. **Trial ⊕⟳232(2)—Peremptory instruction held not in proper form when case submitted on special issues.**

A requested peremptory charge not to find for the interveners for certain of the land involved in trespass to try title was objectionable in form where the case was submitted on special issues, as the jury was not authorized to find for or against interveners for any land.

11. **Appeal and error ⊕⟳1094(2)—Judgment of Court of Appeals as to sufficiency of evidence held final.**

Where there was conflicting evidence as to the eastern boundary of certain property, and

---

⊕⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the issue was submitted to the jury, which found for the interveners, and the Court of Civil Appeals, in reviewing the evidence, found that it sustained the verdict, an assignment of error raising that issue should be overruled.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by Houston Oil Company of Texas against Polly Choate and others, in which Mrs. P. D. McLoughlin and others filed a petition of intervention and brought a cross-action of trespass to try title. From a judgment of the Court of Civil Appeals (215 S. W. 118), affirming a judgment for the interveners, the plaintiff brings error. Affirmed.

H. O. Head, of Sherman, and Kennerly, Williams, Lee & Hill and Fred L. Williams, all of Houston, for plaintiff in error.

Smith & Crawford, of Beaumont, D. F. Singleton, of Kountze, and Sonfield & Sonfield, of Austin, for defendants in error.

GALLAGHER, J. Plaintiff in error, Houston Oil Company of Texas, sued Polly Choate, Jno. W. Davis, and others, in the district court of Hardin county and alleged that it was the owner of the Uriah Davidson survey in said county, and that the defendants were trespassing thereon by cutting and removing timber, and prayed for the immediate issuance of a temporary injunction, and, on final hearing, for the perpetuation of such injunction and for damages. This suit was filed in 1909, and the temporary injunction prayed for was granted. No further action in the case is shown until July, 1915, when defendants in error, Mrs. D. P. McLoughlin and others, filed a petition of intervention in which they alleged that Polly Choate and Jno. W. Davis, original defendants, were dead, and that they had succeeded to all the rights and titles of such defendants.

Interveners further alleged that they were the owners of the David Choate survey, and after describing same by metes and bounds they disclaimed any interest in lands not embraced within the boundaries so described. Interveners, by cross-action, sought to recover in trespass to try title the land so described, claiming to be the owners of the same in fee simple, and also claiming title by virtue of the statutes of limitation of 3, 5, and 10 years.

The Houston Oil Company, on January 10, 1916, dismissed its suit without prejudice, and on the same day filed an answer to the cross-action of defendants in error, in which it disclaimed as to all the land sued for except such as might be in conflict with the A. W. Smith and Uriah Davidson surveys, both of which were alleged to be older surveys than the Choate, and to both of which it claimed title. In reply to the title by limitation asserted by defendants in error, it pleaded that the Uriah Davidson survey was the separate property of Mrs. Susan Moore, a married woman, from December 7, 1860, to October 4, 1881, and that limitation did not run against her during such time.

The case was submitted to a jury on special issues, and upon the answers returned judgment was rendered for defendants in error for all the land sued for by them. The Court of Civil Appeals, in a majority opinion, affirmed the judgment of the trial court. 215 S. W. 118.

The David Choate survey is located on Pine Island bayou, and extends north therefrom 5,250 varas, and, as found by the jury, is 1,576 varas wide. All that part of the Choate survey lying north of the line drawn across the same from east to west 3,832 varas from said bayou is in conflict with the A. W. Smith survey, and all that part lying south of said line and north of a line parallel thereto, and 1,250 varas north of said bayou, is in conflict with the Uriah Davidson survey. Plaintiff in error is the owner of the Smith and Davidson surveys.

The Choate survey was patented in 1848, and the Smith and Davidson surveys in 1835. David Choate died in 1884. Defendants in error introduced in evidence an agreement between the parties to the suit that Mary Choate (also called Polly Choate) was the wife of David Choate, grantee in the patent to the Choate survey; that she survived him, and was his only heir. They also introduced evidence showing that they had succeeded to the title of Mary Choate. The judgment in their favor is based on findings by the jury of adverse possession required by the statutes of limitation of 3 and 10 years.

David Choate, by deed reciting a consideration of $1,133, and dated May 13, 1871, conveyed to Charles W. Winn the entire Choate survey except a homestead of 200 acres off the south end, where he was then living. His purpose in executing this conveyance was to have Winn convey the land to his wife, Mary Choate, as her separate property, which purpose he declared at the time to Winn, and to the witness, Russell, who wrote the deed. Winn agreed to so convey said land. No consideration passed at the time of the execution of the deed, and there was no proof that any consideration ever passed. This deed was not recorded until 1902.

Thereafter, on the 28th day of July, 1871, Winn, by deed reciting a consideration of $133, conveyed the same land to Mary Choate. This deed was duly recorded. There was no proof of any consideration for this deed. It showed on its face that the grantee was the wife of David Choate, and contained no recitals that the purported consideration was paid out of her separate estate, nor that the land conveyed was to be her separate property. The witness Russell, who wrote both deeds, testified that it was common practice, when a man wanted to convey

land to his wife, to convey such land to a third party and to have such third party convey to the wife, and that he, personally, followed that custom in such transactions at that time.

The jury, in response to issues submitted, found that Choate conveyed the land to Winn for the purpose of having him convey it to his wife as her separate property, and that Winn agreed to do so, and did do so.

[1] Plaintiff in error contends that, notwithstanding the facts and findings above recited, the land remained, in fact, community property, because the deed contained no recitals making it the separate property of the wife. This contention cannot be sustained. The land became, in fact, as between Choate and his wife, their privies in blood, and purchasers without value, or with notice, the separate property of Mary Choate, but, as to purchasers for value without notice, it should be treated as though it were, in fact, community property. Cooke v. Bremond, 27 Tex. 457, 459, 460, 86 Am. Dec. 626; Higgins v. Johnson's Heirs, 20 Tex. 389, 395, 396, 70 Am. Dec. 394; McClintic v. Midland Grocery & Dry Goods Co., 106 Tex. 32, 154 S. W. 1157; Ferguson v. Dodd (Civ. App.) 183 S. W. 391 (writ refused).

Plaintiff in error introduced evidence of the sale on June 3, 1873, to one Daniels, of a strip of land 903 varas wide off the north end of the Choate survey under an execution against David Choate, and the sale on the same day to one McClenny, of a further strip of land 1,806 varas wide, lying on said survey immediately south of the strip sold to Daniels, under execution against David Choate, and delivery of deeds conveying said lands to the respective purchasers.

Plaintiff in error did not claim to hold under the grantees in said deeds, or either of them, but contended the same showed an outstanding legal title to the land thereby conveyed, superior to the title asserted by defendants in error, and, based on this contention, requested a peremptory charge as follows:

"You are hereby instructed that the interveners are not entitled to recover any portion of the land in controversy lying north of the line parallel with and 2,709 yards south of the north boundary line of the David Choate, Jr., survey, involved herein; and you will in no event find in favor of interveners for any portion of said land lying north of such line."

This charge was refused, and its refusal is assigned as error.

[2] The land was prima facie community property, but, the deed being to the wife instead of the husband, the legal title was in Mary Choate, and the title apparently vested in David Choate as a member of the community was equitable only. Mitchell v. Schofield, 106 Tex. 512, 514, 171 S. W. 1121;

Patty v. Middleton, 82 Tex. 586, 590, 17 S. W. 909.

Defendants in error contend that, inasmuch as the legal title was in Mary Choate, and the sales were under execution against David Choate alone, the purchasers at such sales, even without notice, took an equitable title only, and that, under the rule laid down in Shields v. Hunt, 45 Tex. 424, 428, and Johnson v. Timmons, 50 Tex. 521, 537, 538, such equitable title was no defense to their action, because plaintiff in error did not attempt to connect itself therewith.

Did such purchasers, if without notice, take only an equitable title to the land? Community property was, by the statutes then in force, expressly made liable for the debts of the husband, and for the debts of both husband and wife contracted during marriage, except in cases especially excepted by law. Act of March 13, 1848 (Session Acts 2d Leg. p. 77; 3 Gammel's Laws of Texas, 77); Act of August 26, 1856 (Session Acts 5th Leg. p. 51; 4 Gammel's Laws of Texas, p. 469).

[3] The land being prima facie community property, the purchasers at execution sales, if without notice, took such title as they would have taken had such land been in fact community property.

[4] Had such land been in fact community property, it would have been, by virtue of the statutes cited, expressly liable to levy under such executions, and the sheriff executing such writs would, in our opinion, have had power under the law to convey to the purchaser all right, title, and interest which the community, or either member thereof, had therein. No other holding would fully effectuate the clear purpose of the statutes. We therefore hold that the purchasers at such execution sales, if without notice, acquired full title to said lands.

[5] Plaintiff in error by showing that the land was apparently subject to sale for the debts of David Choate, and by showing sales thereof under execution against him and deeds to the purchasers reciting the payment of a valuable consideration, made a prima facie case of outstanding legal title, and it then devolved on defendants in error, upon whom the burden of proof on the whole case rested, to meet and overcome the same by countervailing proof. Clark v. Hills, 67 Tex. 141, 149, 2 S. W. 356; Hill v. Allison, 51 Tex. 390, 392, 393. Did they do so?

Fos Jones, under a timber contract with David Choate, entered upon the land in 1870, and lived on it and cut and marketed timber from it, until some time in 1875. He lived in a log house, and had a garden there. Shortly after the deed from Choate to Winn, Jones heard of it and spoke to Choate about it, and expressed fear that Winn would try to take the timber he had contracted for away from him, and announced that he would stay there and work up the timber be-

fore he left. Jones then made arrangements with Mrs. Choate about the timber contract. Jones said Winn had no more to do with the land, as Mrs. Choate had bought it back, and it was her land then. He expressed satisfaction at the fact that Choate had no more to do with the land. From that time on Mrs. Choate claimed the land, and everybody in the country around knew it was her land.

[6, 7] Evidence of the notoriety of the claim of Mrs. Choate was admissible and pertinent on the issue of notice. Galbraith v. Howard, 11 Tex. Civ. App. 230, 32 S. W. 803, 808 (writ refused). The case was submitted to the jury · on special issues. The above evidence authorized the trial court to find, and he will be presumed, in support of the judgment rendered, to have found, that the separate ownership of the land in question by Mrs. Choate was open and notorious in that community, and that Fos Jones was avowedly her tenant, and holding under her in her separate right, and that an inquiry of him would have informed the purchasers at such sales that the property so sold was the separate property of Mrs. Choate. Rev. St. art. 1985.

[8] The possession of a tenant is notice of the rights of his landlord. The Supreme Court in Mainwarring v. Templeman, 51 Tex. 205, 212, held, in a case where land in possession of a tenant was sold and deed not recorded, that the fact that the tenant attorned to the purchaser made his continuous possession thereof notice of such unrecorded deed, and of the rights of the grantee therein as landlord of such tenant. We quote from the opinion in that case as follows:

"But under our statute the rule has become settled that possession, either in person or by tenant, is equivalent to registration. Watkins v. Edwards, 23 Tex. 448; Hawley v. Bullock, 29 Tex. 222; Mullins v. Wimberly, 50 Tex. 457. If the possession be sufficiently open and definite, whether it be in person or by tenant, it is incumbent on one who undertakes to acquire rights in the land to inform himself of the rights of the occupant, or of the landlord of the occupant. The purchaser should not be excused from inquiry unless there be something more to mislead him than his own assumption that parties occupy under the same right as formerly."

The case of Collum v. Sanger Bros., 98 Tex. 162, 164, 165, 82 S. W. 459, 83 S. W. 184, involved the question of notice of an unrecorded deed from one joint tenant to another conveying to the grantee an additional interest in the land. Possession was held by a tenant. It was held by the court that such possession was notice of such unrecorded deed and the rights of the grantee thereunder notwithstanding such possession was consistent with the title as it appeared of record. We quote from the opinion in that case as follows:

"That possession by a tenant is equivalent to the possession of his landlord as to the question of notice is the settled law of this court. Watkins v. Edwards, 23 Tex. 448; Hawley v. Bullock, 29 Tex. 222; Mainwarring v. Templeman, 51 Tex. 205. The question then resolves itself into the further inquiry: Does the fact that the possession held by the party claiming the land is consistent with the recorded title relieve the purchaser or creditor of the duty of making inquiry of such possessor? There is much authority in favor of the affirmative of this question; and the Supreme Court of Iowa, following the doctrine of those courts which hold that possession under such circumstances is not notice, ruled that the possession of one tenant in common is not notice of a title acquired from a cotenant, the conveyance not being recorded. May v. Sturdivant, 75 Iowa, 116. But this court has made a contrary ruling. Wimberly v. Bailey, 58 Tex. 222. * * * In the recent case, Ramirez v. Smith, 94 Tex. 184, it was expressly stated as a general rule that the fact that the possession of one holding land is consistent with the recorded title does not exempt a purchaser from the duty of inquiring of him as to any other title.

"We think it a safe and salutary rule to require of a prospective purchaser of land to ascertain whether any other be in occupancy of it; and, if there be such possession, to go to the possessor and ascertain the nature and extent of his claim. Possession is evidence of title, and it seems to us that common prudence and common honesty demand this course. If so, the possession should be notice to him, and if notice to a purchaser it is notice to a creditor."

In Markley v. Mussett (Civ. App.) 204 S. W. 126, 127 (writ refused) property had been conveyed to the wife during coverture without any recitals in the deed tending to show it to be her separate property. It was in fact her separate property. Her husband, on the 9th of September, 1915, for a valuable consideration, conveyed the property to one Davis, who, on the 23d day of the same month, for a cash consideration, conveyed the land to Mrs. Mussett. Mrs. Mussett's husband acted for her in the purchase of the property. He knew that the tenant was in possession of the land but did not know that he had rented the same from Mrs. Markley, and he made no inquiry of such tenant. Neither he nor Mrs. Mussett had notice of Mrs. Markley's claim to such · property, except such notice as might be presumed from the possession of said tenant. It was held that the possession of said tenant was notice of Mrs. Markley's actual interest in the property. The sale by Mrs. Markley's husband was after the amendment of article 4621, Rev. Stats. by the act of 1913 (Laws 1913, c. 32 [Vernon's Sayles' Ann. Civ. St. 1914, art. 4621]), but the principle on which the decision rests is the same as in the cases above cited; that is that possession by a tenant is notice of the rights of his landlord, though such possession is consistent with the ap-

parent title, and although the landlord's actual rights are inconsistent therewith.

[9, 10] The question was raised by a requested peremptory charge, and the effect was to invoke the judgment of the court whether, as a matter of law, there was any evidence tending to show notice. We think there was such evidence. We have considered this assignment fully notwithstanding the requested charge was objectionable in form, in that it requested the court to instruct the jury not to find for interveners for certain land, when, the case being submitted on special issues the jury was not authorized to find for or against interveners for any land.

We think the requested charge was properly refused on the merits of the issue, irrespective of the form in which it was requested.

Defendants in error contended that the lines of the Choate survey were originally marked on the ground, and each of its corners located and indicated by bearing trees as recited in the patent, and that, as so located, it was actually 1,576 yards wide, instead of 1,250 yards wide as called for in the patent. The southwest corner, the west line, and the northwest corner were admitted to be located as claimed by defendants in error. The bearing trees called for at the southeast and northeast corners could not be found in 1901, and there was some uncertainty as to whether any of the marks found on the east line were old enough to have been made in the original location of the survey. One witness testified to the existence, before the war, of bearing trees corresponding to those called for in the patent, at the points claimed by defendants in error, and that these two corners were connected by a well-marked line at that time, and that the marks on such line then appeared to be about 20 years old. There was a great deal of testimony bearing on this issue. The court submitted the location of the east boundary line of the survey to the jury for determination, and they found that such line was located as claimed by defendants in error.

[11] The Court of Civil Appeals, in an extensive review of the evidence, held that it sustained the verdict. This being the state of the record, we hold that the assignment before us raising that issue should be overruled.

Plaintiff in error requested the court to charge the jury to return a verdict in its favor for all the land involved lying on the A. W. Smith survey. The refusal of this charge is made the basis of an assignment in its application for the writ. The statement shows that this assignment is based on the fact that possession under which limitation as to this tract was claimed was without the limits of the Choate survey, if its east line should be located 1,250 varas east of its west line, as contended by plaintiff in error. This contention was overruled by the verdict of the jury, and this assignment is therefore without merit.

Plaintiff in error requested the court to charge the jury to find in its favor for all the land involved in this suit lying on the Uriah Davidson survey, north of the Choate homestead, which was located on the south end of the Choate survey, and on which the family residence was situated. The boundaries of this homestead were defined by decree of court dated November 29, 1871, and set out in the requested charge, and its north line was located 800 varas north of the southeast corner of the Choate survey.

The conflict between the Choate and Uriah Davidson surveys begins at a point 1,250 varas north of the southwest corner of the Choate. The title to the Davidson survey was in Mrs. Susan J. Moore, a married woman, as her separate property, from December 7, 1960, until August 4, 1881. Plaintiff in error contended that the original possession by David Choate was south of the conflict and that there was no evidence of possession by Choate of any part of the Davidson survey sufficient to vest title thereto in him by limitation prior to December, 1860.

Plaintiff in error further contended that the decree of court vesting title to the south end of the Choate survey in Mrs. Choate as a homestead segregated that tract from the remainder of the survey. While it seems to be conceded that the homestead, as defined by said decree, embraced a part of the conflict with the Davidson, plaintiff in error contended that from and after the date of such decree the possession by the Choates of the land described in said decree would be presumed to be under and by virtue of the same, and would not be extended by construction to include the remainder of the conflict with the Davidson.

The jury found that David Choate had continuous adverse possession of a portion of the land in conflict with the Davidson survey for sufficient time to vest title thereto in him prior to the time title vested in Mrs. Moore, and also found that David Choate and those holding under him had continuous adverse possession of a part of the land in conflict with the Davidson survey for more that 10 years before the institution of this suit.

There was evidence sufficient to justify the submission of these issues. There was also testimony tending to show continuous adverse possession by Choate and those claiming under him of a part of the land in conflict with the Davidson survey north and outside of the boundaries of the land described in said decree for more than 10 years after August 4, 1881, when Mrs. Moore, joined by her husband, conveyed the Davidson survey to another, and before the institution of this suit. There was no request

for a specific finding by the jury with reference to whether such possession subsequent to August 4, 1881, was in fact outside the boundaries described in the homestead tract.

In this condition of the record the peremptory charge so requested was properly refused.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes