"WheeleR, J.
It is insisted, for the appellee, that the deed of January 3, 1832, in behalf of Mariah Parks, cannot confer on her any right as against the creditors of or purchasers from her husband, James Parks; in consequence of the omission to record the deed in this country, and in consequence of the continued possession by Parks of the property here; and that the wife is chargeable with a fraud upon credicors of and .purchasers from her husband, in permitting him to continue in the use and possession of her property as his own, and to obtain a credit upon it without making known her claims.
In support of these positions we are referred to the 2d section of the statute of fraud (4 Stat. 28, sec. 2) which provides that “ if any conveyance be of goods or chattels or slaves, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent within this act, unless the same be by will duly proved and recorded, or by deed in writing or other instrument acknowledged or proved,” etc., “ or unless possession shall really and dona fide remain with the donee.”
But where possession does “ really and bona fide remain with the donee,” the requirement of the act is satisfied, and by making the open and notorious act of possession evidence to the world of the ■ownership of property, its object, the suppression of frauds, is effectually attained. Although the conveyance may not have been “ upon consideration deemed valuable in law,” yet possession in the donee is deemed equivalent to registration, and as effectually takes the case out of the operation of the statute.
In the case before us possession did, it seems, “ remain with the donee.” The deed cannot therefore “ be taken to be fraudulent ” within the statute.
Reference ha% also been made to section 4 of the “ act concerning conveyances ” of 5th February, 1840, 4 Stat. 154, sec. 4. That section provides that “ all deeds of trust and mortgages whatever which shall hereafter be made and executed shall be void as to all creditors and subsequent purchasers without notice, unless they shall be acknowledged or proved and lodged with the clerk to be recorded,” etc.; “ but the same as between the parties and their heirs, and as to all subse *(253) quent purchasers with notice thereof, or without valuable consideration, shall nevertheless be valid and binding.”
This provision is not regarded as introducing a new rule, but only as declaratory of the law, as recognized in the chancery jurisprudence of England and the United States. It is but the declaration of positive law to the effect that the want of registration shall avoid the deed only as to “creditors and subsequent purchasers without noticebut that, as to “ subsequent purchasers, with notice thereof” the deed “ shall nevertheless be valid and binding.”
It is obvious that this statute does not aid the case of the appellee, for it is in its terms prospective, and that he (the appellee) had notice in fact of the wife’s claims to and interest in the slave cannot admit of doubt. Long before his purchase he admitted his knowledge of the wife’s claim. Afterwards and also before his purchase he was at the house of Parks, when the ownership of the slave became the subject of a conversation in his presence, in which the appellant (Parks) “refused to give up” the slave, claiming her as the property oc his wife, and produced the deed of trust affording the evidence of her right.
That whatever is sufficient to put a party upon inquiry (that is, whatever has a reasonable certainty as to time, place, circumstances and persons) is sufficient to charge such party with notice, is well settled as a general rule (1 Story Eq. sec. 400), and has received the authority here of positive law. 5 Stat. 109, sec. 21. And if would seem that, under our law concerning marital rights, which recognizes in the wife an exclusive and separate ownership of lands and slaves (while at the same time it gives the husband the'sole management of them), far less and inferior evidence should be deemed sufficient to put the purchaser upon inquiry and to affect him with notice of the right and title of the wife to this species of property, for the observation of the judge in Casson v. Blanque, 3 Mart. 393, must be equally true here as in Louisiana, where he said, “ there is hardly a citizen of this state who does not know that he must act with due caution, when he buys immovables or slaves from a married man.”
The law (say the court in Brush v. Ware) requires reasonable diligence in a purchaser to ascertain any defect of title. But when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. He is a voluntary purchaser, and having notice of a fact which casts doubt upon the validity of his title, are the rights of innocent persons to be prejudiced through his negligence? 15 Pet. 112.
But in the case before us, resort need not be had to evidence of con *(254) structive notice, for actual notice of the equitable title of the wife is brought directly home to the party. He cannot therefore protect himself against her claims, hut his own title will be postponed and made subservient to hers. 1 Story Eq. sec. 395.
The material questions presented by the record before ns were the subject of investigation in the supreme court of the United States in the case of The Bank of the United States v. Lee and others, 13 Pet. 107. That case presents a striking analogy in most respects to the one before us; and, although it carries the doctrine in support of the wife’s equitable title much farther than is necessary to the decision of the cause under consideration, it may be regarded as having adjudicated upon similar facts the leading principles of this case.
In that as in this case, the rights of the wife under a deed of trust executed in another state before the removal, and credit extended to the husband, were the subject of controversy. There, also, the deed had been duly executed in the state of the former domicile but had never been recorded in the District of Columbia, whither the husband had removed with the property and where he resided with his wife when he acquired the credit which gave origin to the litigation.
The principal points of difference in the two cases seem altogether favorable to the wife in the case under consideration. In the former case the wife had remained silent respecting her claims during a succession of many years, while her husbandj to her knowledge, had obtained credit to a large amount on the faith of the property. In that case the conveyance in behalf of the wife was made by the li-usband in Virginia to trustees there, who remained in that state after the removal and who never had possession of the property, but had suffered the husband not only to retain the property in his possession after the deed, but to remove with it to Washington county (formerly a part of the state of Maryland) and there ever after, until his death, to continue in the use and control of the property — to hold it out to the world as his own and to acquire credit on the faith of it, without any notice whatever of the claims of the wife. There are other minor points of difference, all, howevez’, pz’esenting the claims of the wife in that case in a less favorable aspect than in the case under consideration.
In the case referred to, the deed was made by the husband (Richard Bland Lee) in Virginia, in 1809. He never parted with the possession, hut removed with the slaves to the District of Columbia in 1814, and then, to all appearances, continued the absolute owner. The deed was never recorded izi the District of Columbia. Having obtained credit on the faith of the property and become largely indebted, and *(255) judgment having been recovered against him in favor of the plaintiffs, they sought to subject the property to the satisfaction of their judgment; and attacked the deed of 1809 with a view to invalidate it on two grounds, contending:
2d. That if valid in Virginia, the deed not having been recorded in the county of "Washington (District of Columbia), and the continued possession of the property covered by it having remained with the grantor, both in Virginia and there, up to the time of his death, was such a fraud upon the creditors of and purchasers from Richard Bland Lee as to destroy the effect of the conveyance.
In delivering the opinion of the court upon the second ground, and in reply to the arguments adduced in its support, Judge Catron says: “On the second ground on which relief is sought it is insisted the complainants are entitled to have satisfaction out of the property claimed by Mrs. Lee:
“ 1st. Because the continued possession, use and enjoyment by said Richard Bland Bee of the said property, purported to be conveyed by the deed of 9th January, 1809, was evidence of a continued ownership, and avoids said deed as against subsequent hona fide purchasers and creditors without notice.
2d. That said deed as executed in Virginia will not validate the possession, Use and enjoyment of said property in the city of Washington.”
The investigation (says the judge) of this assumed ground of relief involves considerations affecting the nuptial relation. We are asked (he continues) to deal with the conduct of a wife living in harmony with her husband, as if she was a third person; and to. de-' cree against her because she did not expose her husband to the community in which they lived, and especially to the complainants, when within the wife’s knowledge he was holding ont her property as his own, and using it as his own and obtaining credit upon the faith that he was the true and absolute owner.
That Richard Bland Lee did deal with and use the property in controversy, as if it had been his own while he resided in this city; and that the community did believe him the real owner, and give him credit on the faith of the property, is no doubt true; and it is very probable that Mrs. Lee knew the fact, but continued passive and silent on the subject.
Was it a duty incumbent on Mrs. Lee to advertise the community in which she lived that her husband bad no title to the property, on the faith of which he was obtaining credit, but that it was hers? This would have been charging the husband with fraudulent conduct; for *(256) it cannot be denied that i£ A sells and conveys bis slaves or lands and then prodnces to another his previous paper title and obtains credit upon the goods or lands by pledging them for money loaned, he is guilty of a fraud; and if the true owner stands by and does not make his title known, he will be bound to make good the contract on the principle that he who holds his peace when he ought to have spoken shall not be heard now that he should be silent. He is deemed in equity a party to the fraud. How far the principle applies in a case of the wife of a fraudulent vendor standing by, we are not called on to decide, and wish to be understood as not deciding. Mrs. Lee’s is not that case; to say the most, she was only passive and silent in regard to her 2’ights generally, although she may have had knowledge that Mr. Lee was obtaining credit on the faith of her property and the question is, was it her duty to have acted otherwise? All we need say is, that a court of chancery cannot hold Mrs. Lee responsible because of her silence. * * *
“Then as to the question of possession continuing with the grantor. Leave the relation of man and wife between Richard Bland Lee and Elizabeth Lee out of view and it would have been impossible that any one could have been misled by Mrs. Lee having the possession — she having the sole and exclusive beneficial interest and right of possession. * * *
“It is insisted, however, that when Richard Bland Lee removed into Washington city, the statute of Maryland operated on the "Virginia title of Mrs. Lee and defeated it for the benefit of purchasers from her husband.
“ The statute declares that no goods or chattels whereof the vendor shall remain in possession shall pass, alter or change, or any property thereof be transferred to any purchaser, etc., unless the same be by writing and acknowledged before one provincial justice of the county where such seller shall reside, and be within twenty days recorded in the records of the same county.
“ The statute has no reference to a case where the title has been vested by the laws of another state, but operates only on sales, mortgages and gifts made in Maryland. The writing is to be recorded in the same county where the seller shall reside when it is executed. The seller, Richard Bland Lee, residing in Virginia, it was impossible for Mrs. Lee to comply with the act. That the Virginia deed secured to Mrs. Lee the same rights here that it did in Virginia, we apprehend to be to some extent an adjudicated question.” _ •
fn support of this position the judge presents a summary of the leading facts and points decided in the case of Crenshaw v. Anthony, *(257) Mar. & Yerg. 110, which is so strikingly in point in almost every feature with the case under consideration, and having been cited with approbation by the supreme court of the United States, its insertion here may, it is conceived, tend to define and illustrate the principles involved in the case before us.
The following, says Judge Catron, are the material facts in the Tennessee case:
In 1812, in Lunenburg county, Virginia, Daniel Crenshaw sold and conveyed certain slaves to Diehard Herring, who soon after contracted for the purchase of a tract of land from Daniel Crenshaw, lying in the same county; but Haney Crenshaw, the wife of Daniel, ref used to relinquish her right of dower; and to induce her to do so, Herring agreed with her and her son, Cornelius Crenshaw, to convey to the latter in trust for his mother and for her separate use two of the slaves previously purchased from Daniel Crenshaw. The deed was duly executed and recorded in Lunenburg.
In 1814, Daniel Crenshaw and his wife removed to Tennessee, carrying the slaves with them; Cornelius, the trustee, continuing to reside in Virginia. In Tennessee, to all appearance, Daniel Crenshaw was the true owner of the slaves, and acquired credit on the faith of the property. He was impreivident, for which reason, manifestly, the wife caused the slaves to be secured to herself; and it may be remarked that similar motives have led to many, not to say most, of this description of conveyances in the states, where the provisions of the act of 1785 of Virginia prevail.
In 1821, Stacy recovered a judgment against Daniel Crenshaw, in the county of his residence in Tennessee, by virtue of an execution founded upon which, Anthony, the sheriff, seized upon the slaves; and Cornelius Crenshaw, as his mother’s trustee, sued the sheriff in de-tinue. _ The circuit court held the deed of trust void, by force of the statute of Tennessee (which is very nearly a transcript of that of Virginia) because the deed had not been recorded in Tennessee; a verdict was rendered for the defendant, and the plaintiff prosecuted his writ of error to the supreme court, where the judgment was reversed.
The court held that the deed made in Virginia, separating the title and possession, was of a character to be operated upon by the act of 1785 of Virginia; and had'the deed not been recorded there, as to creditors and purchasers, the title would have been deemed to be with the possession; but having been recorded there, a title fair and unimpeachable vested in the trustee and cestui que trust, Haney; that being valid in Virginia, the statute of Tennessee could not affect it. Furthermore, the court refused to hold the wife responsible because *(258) she had continued passive and silent in regard to her separate right to the slaves; by which individuals might have been, and in all probability were, induced to believe her husband the true owner, and to give him credit on the faith of the property. In that case as in this, the wife had done no affirmative act designedly to draw in the creditor to trust her husband; and the court believed, by remaining silent, she had violated no duty nor been guilty of any deceit on which a forfeiture of the right could be pronounced.
The judge concluded by saying, “The deed vesting the property in Mrs. Lee’s trustees, having been duly recorded in the manner required by the statute, it was effectual according to the laws of Virginia, to protect the title against subsequent creditors of, or purchasers from, Bichard Bland Lee.”
Upon the question whether a conveyance executed in another country comes within our statutes requiring the recording of deeds, etc., and what will be the effect of non-compliance with the provision of these statutes as to innocent third persons (bona fide creditors and purchasers without notice), it is not necessary here to decide. That is not the case before us, and upon these questions we express no opinion. As between the parties, it is clear that the mere want of recording cannot of itself divest a title which had been vested by the laws of the country where the conveyance was made.
It will be perceived that the decision-in the cases referred to establishes, as applicable to the case under consideration, the propositions:
1st. That the deed having been duly executed-in the state of Tennessee, and being valid there, is equally so here, to vest the title to the slave in the trustee (Parks) for the benefit of his wife, Mariah.
2d. That the title, having vested in the trustee and cestui que trust, by the laws of Tennessee, is not divested by the omission to record the deed in this country; and
3d. That the silence of the wife respecting her title (on her arrival in this country and previous to the credit given her husband) was not incompatible with her duty, and could work no forfeiture of her rights.
These propositions are decisive of the case before us in favor of the appellant; and must they not command the assent of every well ordered mind, when brought to consider the peculiar nature of the nuptial relations?
Shall the wife be regarded, in respect to the conduct of her husband, as occupying the different position of a third person, subject to the same rigid politic rules? Shall she be held to have forfeited her *(259) rights, because she did not publish to the world her husband’s infamy? Such a doctrine would indeed be monstrous. Its assertion as a principle of our municipal law would present that system which professes to merge in the husband the legal existence of the wife and to regard them, for most purposes, as one person in law; in the aspect of concealing beneath its surface the elements of social discord and bearing, stamped upon its features, such distortion and moral obliquity as to call forth every honest impulse in its condemnation. Such is not our social system. Ho principle so pregnant with concealed mischief reposes beneath its surface or has a resting place within the influence of our humane and enlightened institutions. Whatever rights may be secured to the wife by the providence and forecast of paternal affection can never be forfeited by her refusal to make them the subject of domestic contention. The law removes all inducement to such a consequence, and exonerates the wife from all concern and responsibility respecting the management of her separate property during the marriage, by giving the husband during that period its sole management and control. 4 Stat. 4, sec. 3. Thus the wife not only is not required, but she is tacitly forbidden except in certain extreme cases (id. 5, secs. 9 and 10) to assert any control over her property during the coverture, by the positive provision as well as the spirit of our laws respecting marital rights. In asserting this as a principle of positive law, our system is not peculiar. And it is conceived that in the absence of this provision in the statute, it would still be regarded as the rule of action, having its foundation in the very nature and being of the nuptial state.
But rational and satisfactory as the principles asserted in the cases referred to may appear, and powerfully as they may be there supported by reason and authority, not having had occasion to consider what qualifications, if any, they may be subject to under our local laws, it is not intended to rest upon them alone the decision of the case before us. As has been remarked and as abundantly appears, the ap-pellee here purchased the wife’s property with actual notice of her claims. He bought voluntarily, with his eyes open, and does not deserve to be i’egarded in the favorable light of a bona fide creditor or a purchaser without notice. If the husband as trustee was guilty of a fraud upon the idghts of the wife, he is garticejps criminis in that fraud, and cannot claim the favor or protection of a court of justice to enforce his iniquitous claim.
Under the circumstances and the evidence in this case, that an honest jury of the country should have so misconceived the law and their duty, as to have found a verdict for plaintiff below, is indeed surpris *(260) ing. This is not a case in which the jury, acting within their appropriate sphere, have confined themselves to their peculiar province in weighing the evidence; hut it is a case in which they have returned a verdict, manifestly without and against evidence. They have either shut their eyes to the light and obstinately disregarded the evidence; or else they have been deceived and misled, and have in consequence mistaken the law. Their verdict is clearly against both the law and evidence and must be set aside.
"We are of opinion that the judgment of the district court be reversed, and the cause remanded for a new trial, in accordance with the law of the case as herein contained.