## WATSON v. CHALK.

Conveyances of land by public act before a Judge or Notary, were included in the provisions of the Act of December 20th, 1836, (Hart. Dig. Art. 2754,) and required to be proved and recorded in the manner therein prescribed, within twelve months from that time, under pain of being supplanted by a subsequent conveyance to an innocent purchaser.

The constructive notice which is conveyed by the proper recording of a deed, extends only to purchasers, &c., claiming under the grantor in that deed, by title subsequent. As if A conveys to B, and B to C, and C to D, and the conveyance to D, only, is recorded, it is not constructive notice to subsequent purchasers from A. or B.

Appeal from Bell. The plaintiff in this suit claimed title, derived from Charles Curtis, the original grantee. Curtis, in 1835, conveyed the land in controversy to Niles F. Smith, who conveyed to Elliot Fletcher in 1836. The conveyances in both sales were regularly executed before J. L. Hood, Judge of the Jurisdiction, and registered in January, 1850. A deed from Fletcher, for the same land, to Watson, the plaintiff, was executed in 1846, and registered in 1848.
11

The defendant claimed title by a deed executed to himself by Curtis, the original grantee, dated November 24th, A. D., 1849, and registered on the 26th of the same month.

The Court instructed the jury, that the deeds from Curtis to Smith and from Smith to Fletcher were required by the Act of 1836, to be registered, in order to take effect as to innocent purchasers; and refused to instruct the jury, at the request of the plaintiff, that the registry of the deed from Fletcher to Watson (the title purporting to come from Curtis) was constructive notice to the defendant, that Curtis had sold the land.

*J. A. & R. Green*, for appellant. I. The law of Spain was in force in Texas at the time of the making of the instrument under which the plaintiff claims. It required the parties to appear before a Notary Public, who made out the transfer, in the form of a memorandum of sale, under his own hand and seal, with attesting witnesses, retained the same, attaching it as a leaf to his book of records, and giving a copy thereof to the grantee, which was executed with the same solemnities. His title was a part of the records of the land, the protocol serving as a record, the testimonio as a title for his private use.

But the Congress of 1836 attempted to better the law, and passed the registration law, under which the defendant seeks to protect his title. That Act required "all deeds, liens and color of title" to be registered in twelve months. The important question then occurs, Does this statute require the registration of the species of instrument under which the plaintiff claims?

That the title is not one by deed, is most evident. We read in the Common Law, of title by deed and title by record. The Common Law, however, made a clear distinction between them. There is exactly the same difference between this title and a title by deed, that there is between a recognizance and a bond. The title was made by the Judge of the municipality, who was ex-officio Notary Public, and took effect from his

signature; the deed, by the grantor himself. In a deed, delivery to the grantee was necessary. In the notarial instrument, the transfer was complete on the execution of the protocol, and the delivery of the testimonio was only for the convenience of the grantee. The notarial instrument was in its nature a record, and remained as such for the inspection of all.

Neither does this instrument come under the denominations of "liens or other color of title." What the Congress meant by color of title, is not easy to determine with exactness. That something in the nature of a lien, bond for title, or other incomplete or merely equitable title, is meant, seems most probable from the context. This probability is strengthened by the fact, that in the very next Section it is contradistinguished from the word " title." No one can contend that all titles are intended, as being required to be registered. Government grants and decrees of the Courts often constitute titles, and, although they may be registered, yet it is not necessary that they should be. It is evident that the Congress did not mean a notarial transfer, when they used the term " color of title." Indeed the Supreme Court have already declared in Titus v. Kimbro, 8 Tex. R., that it is only by implication that these instruments are permitted to be registered.

But the whole tenor of the statute shows that the Congress had no reference to, or thought of, the species of instrument in question; for the Act in several Sections requires the signature of the grantor to be proved by two subscribing witnesses, whereas the signature of the notarial officer is the only necessary and proper proof of the notarial transfer. Is it to be supposed that if Congress meant to require the holders of titles already records, long since executed, the witnesses scattered or dead, to be again probated and put on record, they would have left such a requisition to implication? Would they not rather have expressed the law in terms too clear to be misunderstood? It is argued that public policy requires this construction of the law. But public policy ought not to encourage fraud. During

the confusion and tumult of the early settlement of Texas, and the wars with Indians and Mexico, the titles became so much scattered, that it was impossible to collect and register them; and to permit the original holders of land to sell all their lands again, would be an encouragement of fraud.

It is said that the notarial records are deficient as a means of warning purchasers, because, (1) many of them were carried off to Mexico; this argument would be more forcible, if addressed to our Legislature, to induce them to send a commission, and have the missing archives returned to their proper places. (2) That said records are in like manner defective, because of a failure of officers to keep them properly. This Court has decided in Titus v. Kimbro, that innocent parties should not suffer by the neglect of officers to do their duty. Subsequent statutes to that of 1836, make no mention of deeds already executed, but of those to be executed thereafter, and hence will not apply. We see then no reason why, in this case, the subsequent purchaser should be preferred to the equally innocent prior purchaser, who has committed no fraud and is guilty of no neglect.

II. Article 2754 uses the terms "deed, lien, or other color of title." These terms do not include public acts, which were records. The term "deed" is satisfied by "private acts."

The Act of the same date, (Article 260,) requires the Judges of the first Instance to deposite the protocols of all public acts, remaining in their offices, in the County Courts. Wherefore should they again be required to be recorded?

Article 746 recognizes those public acts as being on the same footing with the other recorded conveyances, and makes certified copies evidence.

This construction will shed light on the difficulties alluded to in Paschal v. Perez, 7 Tex. R. 357, 358.

III. The Court also refused to charge the jury, that if the deed from Fletcher to the plaintiff was on record, and recited the deed from Curtis to Smith, this would be constructive notice, of the latter deed, to the defendant. This refusal is sub-

mitted as error—argument could not make the proposition any clearer.

*Giddings* and *Armstrong*, for appellee.

LIPSCOMB, J.　The defendant claims as an innocent purchaser for a valuable consideration, without notice.　The appellant contends that the two first deeds, from Curtis to Smith and from Smith to Fletcher, being notarial acts, and before any registration law had been enacted, had the force and effect of records, and required no registration to be made of them ; and such would be the correct conclusion, if the contest was between him and Curtis.　But where the rights of an innocent purchaser intervene, we believe that the legal effect of the notarial act would be different.　The Congress of Texas, in view, no doubt, of the loose manner in which sales of land had been made, and the evidence of such sales preserved by the interested party, on the 20th December, 1836, enacted as follows, " Any person who owns or claims land of any descrip- " tion, by deed, lien or any other color of title, shall, within " twelve months from the first day of April next, have the " same proven in open Court and recorded in the office of the " Clerk of the County Court in which said land is situated ; " but if a tract of land lies on the county line, the title may " be recorded in the county in which part of the said land " lies." (Hart. Dig. Art. 2754.)　If the two deeds had been proven under the provision of this Act, and recorded in the county where the land was situated, the record would have been constructive notice to all subsequent purchasers.　By failing to have them so recorded, they cannot avail themselves of this elder title, against a title subsequently made to an innocent purchaser for a valuable consideration.　Nor can the deed, made by Fletcher to the plaintiff, avail ; it was no notice, when recorded, that the title to the land had passed out of Curtis, the original grantee.　Their neglect to have their deeds recorded, placed it in the power of Curtis to perpetrate a

fraud, that the Act, above recited, was intended to guard against. It is a well established rule of equity jurisprudence, that when one of two innocent persons must suffer, the loss must fall on the party who has been least diligent to prevent the fraud. Further discussion is unnecessary, the judgment of the Court below is affirmed.

Judgment affirmed.

WHEELER, J., not being present when the case was submitted, gave no opinion.