## ✓ JANUARY, 1909.

---

Reuben Ryle et al. v. John Davidson et al.

No. 1862.   Decided January 13, 1909.

1.—Unrecorded Deed—Innocent Purchaser—Burden of Proof.

The burden of proof is upon one claiming as against a prior unrecorded conveyance from his grantor to show that he was an innocent purchaser for value.   (P. 231.)

2.—Same—Registration Statutes.

The Act of Feb. 5, 1840 (Laws of Republic, 4th Congress, p. 153) which made void unrecorded deeds only as against those subsequently purchasing for a valuable consideration and without otice, was not restricted in its operation to conveyances thereafter made, but applied as well to an unrecorded deed executed in 1835, which under the previous law (Act of Dec. 20, 1836; Laws of Republic, 1st Congress, p. 148) was ineffective as to all rights of third parties. (Pp. 231–233.)

3.—Same—Cases Distinguished.

Crosby v. Huston, 1 Texas, 206; Kimball v. ·Houston Oil Co., 100 Texas, 336; Watson v. Chalk, 11 Texas, 89; Guilbeau v. Mays, 15 Texas, 410; Parks v. Willard, 1 Texas, 350; Watkins v. Edwards, 23 Texas, 443; Hawley v. Bullock, 29 Texas, 216; Beaty v. Whitaker, 23 Texas, 528; Mitchell v. Puckett, 23 Texas, 573; Martin v. Parker, 26 Texas, 262; discussed, distinguished and explained.   (Pp. 231–233.)

**4.—Unrecorded Deed—Innocent Purchaser—Payment of Value—Evidence—Recitals Against Interest in Deed by Deceased.**

As against claimants under a deed unrecorded at the time the grantor afterwards conveyed to another, the recital in the junior conveyance of payment of purchase money is not admissible to prove that fact on the ground that it is a declaration against his interest by one deceased. Having parted with his title, the grantor had no adverse interest to be affected by the recital. (Pp. 233, 235.)

**5.—Same—Proof by Circumstantial Evidence.**

The ruling here made is limited to the question certified, the admissibility as a declaration against interest of the recital by a deceased grantor of payment by a junior grantee; the question of its admissibility, in connection with other proof, to show payment by circumstantial evidence is not involved. (Pp. 233, 234.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

*J. J. O'Fiel* and *Robertson & Whitaker*, for appellants.—The recital of the receipt of the purchase money by Manuel Chirino in his deed to Thouvenin, the junior purchaser, dated January, 1846, is not evidence against appellants claiming under an older and unrecorded deed from Chirino, proof having been made that the grantor and all other parties to the instrument are dead. 1 Greenleaf on Evidence, sec. 153; Rogers v. Pettus, 80 Texas, 428; Baldwin v. Goldfrank, 88 Texas, 258; Illies v. Frerichs, 11 Texas Civ. App., 575; Dean v. Gibson, 34 Texas Civ. App., 508; Eastham v. Hunter, 98 Texas, 560; Turner v. Cochran, 94 Texas, 480; Watkins v. Edwards, 23 Texas, 447; Beaty v. Whitaker, 23 Texas, 529; Bremer v. Case, 60 Texas, 152; Fletcher v. Ellison, 1 Posey, U. C., 661; Sanders on Pl. and Ev., p. 49; Outram v. Morewood, 5 T. R., 123.

The recital of the receipt of the purchase money by Chirino, at the time it was made, was not against his interest. Greenleaf on Ev., secs. 121, 149; 1 Starkie on Ev., 348.

The burden of proof is on the junior purchaser, under whom the appellees claim, to show that he was an innocent purchaser for value without notice of the older title. Such burden is not on the appellant, holding under the older title, in view of the fact that the older deed was executed in 1835 and the junior deed in 1846. Kimball v. Houston Oil Co., 100 Texas, 336; Watkins v. Edwards, 23 Texas, 447; Beaty v. Whitaker, 23 Texas, 526; Mitchell v. Puckett, 23 Texas, 573; Martin v. Parker, 26 Texas, 253; Hawley v. Bullock, 29 Texas, 222; Rogers v. Burchard, 34 Texas, 442; Littleton v. Giddings, 47 Texas, 109.

We may here remark in conclusion that sec. 13 of the Act of 1840, Hartley's Digest, art. 2775, seems to have been intended directly to supersede and repeal sec. 40 of the Act of 1836. It is general in its application to all conveyances mentioned in this act, whether executed before or after the Act of 1836, and its peculiar phraseology providing that senior deeds "should not take effect," used in the Act of 1836, would indicate that this section referred to that and exactly covered the subject matter. The difference is that in the Act of 1836 (sec. 40) it is provided that the senior deed shall not take effect against third parties until recorded, but in the Act of 1840

(sec. 13) it is provided that such senior deed shall not take effect as against subsequent purchasers for value without notice. We submit some authorities bearing on the implied repeal and substitution of statutes: Bryan v. Sundberg, 5 Texas, 418, and authorities cited; State v. Travis County, 85 Texas, 435; Rogers v. Watrous, 8 Texas, 62; Hanrick v. Hanrick, 61 Texas, 596.

*Greer, Minor & Miller, Greers & Nall, Campbell & McMeans, Chas. W. Abbott* and *A. D. Lipscomb,* for appellees.—The declaration of a deceased person, against his pecuniary interest, concerning a matter which he was in a position to know, is admissible after his death in the same way that his testimony in open court on the same point would be, if he were living. Heidenheimer v. Johnson, 76 Texas, 207; Greenleaf on Evidence, secs. 147, 148, 149, 153; Thayer's Preliminary Treatise on Evidence, 520; Underhill on Evidence, 162; Taylor on Evidence, 588, 591; Wharton on Evidence, sec. 266; Best on Evidence, 543; McKelvey on Evidence, 254; Philips on Evidence, 300; Jones on Evidence, sec. 327; Thayer's Cases on Evidence, 476 to 507; Long v. Moore, 19 Texas Civ. App., 363; Sydnor v. Texas Savings Association, 42 Texas Civ. App., 138.

The Texas cases requiring payment of purchase money by a junior vendee to be proven otherwise than by recitals of the junior deed, are based on the general rule excluding mere hearsay; and such cases no more exclude recitals that are brought within an exception to the hearsay rule than they would exclude the testimony of the grantor, if living and called to the stand. For the proposition that such recitals are excluded because subject to the hearsay objection we cite Watkins v. Edwards, 23 Texas, 447. In order to be able to say none of the decided cases exclude a recital which has been, by affirmative proof of death and disservice of interest, brought within a recognized exception to the hearsay rule, we have examined the following cases and can say that none of them, and none of those we have examined, have excluded such recital. Beaty v. Whitaker, 23 Texas, 528; Hawley v. Bullock, 29 Texas, 221; Rogers v. Burchard, 34 Texas, 453; Moore v. Curry, 36 Texas, 669; Hamman v. Keigwin, 39 Texas, 34; Harrison v. Boring, 44 Texas, 263; Taylor v. Harrison, 47 Texas, 454; Holmes v. Johns, 56 Texas, 53; Thompson v. Westbrook, 56 Texas, 267; Morris v. Meek, 57 Texas, 387; Lewis v. Cole, 60 Texas, 341; Bremer v. Case, 60 Texas, 153; Houston & T. C. Ry. Co. v. Chaffin, 60 Texas, 553; Slayton v. Singleton, 72 Texas, 209; Rogers v. Pettus, 80 Texas, 428.

The relative positions as between an unrecorded instrument, executed prior to the registration law, and a subsequent conveyance by the same grantor of the same land, was first fixed by the Act of 1836, which rendered the junior title presumptively superior. Guilbeau v. Mays, 15 Texas, 415; Watson v. Chalk, 11 Texas, 93. The consequences of failure to record the prior instrument, as prescribed by that act were never altered as to prior unrecorded instruments, unless by the Acts of February 5, 1840, and February 5, 1841, and the provisions of the two latter were strictly limited to cases in which the prior instrument was, as therein expressed, "hereafter executed."

The earliest term to which those words, "hereafter executed" could be construed by any process of equitable or liberal construction to have relation would be the beginning of our registration system, December 20, 1836. No act subsequent to the Act of February 5, 1840, was passed that could bring prior unrecorded instruments, executed before the registration system, within the terms of the Act of 1840, until the passage of the Act of May 12, 1846, which went into effect July, 1846, before which time Thouvenin acquired title, thus bringing himself within the principle of the decision of the case of Kimball v. Houston Oil Company, 100 Texas, 336.

The only manner in which this act could be given application to precedent instruments executed prior to any registration law, would be by construing it to impliedly repeal the greatly different provisions of the Act of 1836, which was not a conveyancing act primarily, but which had reference particularly (in respect to this branch of it) to registration, and which included many kinds of instruments not provided for by the Act of 1840. The rule as to repeals by implication in this State is not favorable to them. Neil v. Keese, 5 Texas, 23; State v. Alcorn, 78 Texas, 387; Sutherland on Statutory Constructions, 180; Fowler v. Poor, Dallam, 403.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This case is presented by a certificate from the Court of Civil Appeals for the First District in which two questions, with the facts out of which they arise, are stated for decision.

The controversy is over a half of the league of land in Jefferson County originally granted to Manuel Chirino under whom all parties claim. Chirino executed two conveyances of the league, one on September 15, 1835, to Juan Leplicher, which was not recorded until February 15, 1847, and the other on January 9, 1846, to Arnold Thouvenin, containing a recital of the payment by Thouvenin and the receipt by Chirino of $500 as its consideration, and containing also a special warranty of title by Chirino against all persons claiming title through or under him.

A question in the case is whether the title of the plaintiffs (appellants) under the deed to Leplicher or that of the defendants (appellees) under the deed to Thouvenin is the superior, and this depends, of course, upon the further question whether or not Thouvenin was a purchaser for value and without notice of the elder deed. It was proved that Chirino, Thouvenin, the subscribing witnesses to the latter deed, and the officer who took the acknowledgment of it were dead long before the trial. The questions certified are as follows:

"First question. Under the facts stated, is the recital in the deed from Chirino to Thouvenin, of the payment by Thouvenin, and the receipt by Chirino of the purchase money, admissible in evidence in this suit, against appellants, as a declaration against interest by Chirino, to prove the payment of the purchase money by Thouvenin?

"Second question. Was the burden of proof upon appellees to show that Thouvenin was an innocent purchaser, without notice of

the deed to Leplicher, or was it upon appellants to show the contrary, in view of the fact that the deed to Leplicher was executed in 1835, and the deed to Thouvenin in 1846?"

The second question naturally comes first in order, and the answer is that the burden of proof of the facts stated in it was upon the appellees. This has been held to be the rule in every case in this court, in which the burden of proof has been discussed and in which the question was as to the relative merits of an elder unrecorded deed and a junior one to the same land, except in the cases of Crosby v. Houston, 1 Texas, 203, and Kimball v. Houston Oil Co., 100 Texas, 336, in which both deeds were executed before the enactment of the Registration Law of 1840, and in which the rights of the junior purchaser became fixed under the Registration Law of 1836. Some of the older opinions treating of the doctrine of innocent purchaser, such as Watson v. Chalk, 11 Texas, 89, and Guilbeau v. Mays, 15 Texas, 410, do not discuss the question as to the burden of proof at all, but are confined to the consideration of the substantive rules of the doctrine. In parts of his opinion in Guilbeau v. Mays, Judge Lipscomb speaks as if he was assuming, at least, that the burden was on the claimant under the unrecorded conveyance, but there is no distinct holding to that effect. It clearly appears from the report of that case that the junior claim was based upon appropriations of the land by locations, surveys and patents, which carry with them their own evidence of a consideration (Johnson v. Newman, 43 Texas, 642), and circumstances are stated from which the court evidently inferred that there was no notice. The decision is not an authority upon the question as to the burden of proof, and, if it were, it would be in conflict with later cases if the junior claim there involved accrued after the adoption of the law of 1840, which is probable.

In Kimball v. Oil Co., supra, the court stated the reason for the distinction between the cases in which the junior deed was executed before the enactment of the law of 1840 and those in which it was executed thereafter, as due to the difference between the language of that law and that of the law of 1836, defining the predicament in which a junior claimant must stand in order to secure precedence over the claim of the holder of an older unrecorded deed, the law of 1836 only requiring that it appear that the junior claimant had a right or interest to be affected by the unrecorded deed in order to claim the protection of the declaration that such deed should not "take effect" against such right or interest; and the law of 1840, making it necessary that the junior purchaser appear to be one for value and without notice, since it was only in favor of such the statute declared the unrecorded deed to be void. It is now urged that the part of the opinion which assumed that the language of the law of 1840 was the basis of other decisions defining the facts which must be proved by the junior purchaser was a dictum. This is true, the point decided in that case being that the law of 1836 only required proof of a right or interest of the junior purchaser to entitle him to protection against the unrecorded deed, the different effect of the law of 1840 being stated in order to reconcile that hold-

ing with those decisions requiring proof of the payment of value and the absence of notice. But the argument of counsel has not convinced us that the view expressed of the law of 1840 was wrong. The position taken by counsel may be stated thus: The Act of 1836 made unrecorded deeds, which it and its amendment of 1839 required to be recorded, ineffective as against the rights and interests of third persons; that this continued to be their status so long as the rule thus declared remained unchanged; that the law of 1840, with its differing language, applied only to deeds to be executed and recorded after its enactment and not to those which, like that from Chirino to Leplicher, were then in existence; that to the latter the rule of the former law continued to apply until the passage of further legislation changing it in its application to pre-existing deeds, which legislation, it is contended, first took effect in 1846, after the execution of the deed from Chirino to Thouvenin. In short, the contention is that the Act of 1836 still operated against the unrecorded deed in question when, in 1846, the junior deed was executed, and made the rule laid down in Kimball v. Oil Co. applicable. But we do not agree with the contention that all of the provisions of the Act of 1840, which was the "Act concerning conveyances," were restricted to those to be thereafter executed. Some of the provisions undoubtedly were so restricted, but others of those concerning registrations were broad enough to embrace pre-existing as well as subsequent conveyances. The rules established as to the effect of the recording or the failure to record conveyances are set forth in several sections of the Act, the first, the second, the fourth, the fifth and the thirteenth. They are too lengthy for insertion and an elaborate discussion of their language is unnecessary. The reiteration of substantially the same language in the several sections itself indicates the purpose to establish comprehensive rules on the subject of registration, applicable to all instruments required to be recorded, irrespective of the dates of their execution; and the fifth section clearly expresses this purpose, whatever might be the effect of the others. The fifth requires the clerks to record "any conveyance" "at any time" in the form required by the Act. There is no reason to restrict this language to conveyances executed after its enactment. All conveyances of land had already been required to be recorded by the Acts of 1836 and 1839, under the penalty prescribed by the former. When rights had accrued while it remained unchanged they were controlled by its provision, as held in Kimball v. The Oil Co. But when no junior conveyance had intervened, no reason can be assigned why the Congress, when it came, in 1840, to again regulate the subject of registration, should not again have provided for the registration of all conveyances already executed or to be thereafter executed, and have prescribed the effect of the registration or nonregistration. Nothing but restrictive language in the statute would justify a construction giving it so partial an operation. While some of the sections are restricted to conveyances to be thereafter executed, the fifth and thirteenth sections are general and we see no reason why they should be limited as contended.

In Parks v. Willard, 1 Texas, 350, Judge Wheeler, after quoting

part of the language of the fourth section, says that the act is prospective, but in the same sentence says that the party claiming against the unrecorded instrument had notice of it. He does not mention the fifth or any other section, and it is not likely that much attention was given to the question of registration, for if the law of 1840 did not apply, those of 1836 and 1839 did; and had the case depended on registration, those laws could not have been avoided. It is apparent, therefore, that the decision must have been based on the other reasons given. While great respect should be given to expressions in the opinions of the court as then constituted, especially where they concern the meaning of statutes so recently adopted, we are satisfied by the further course of decision by the same judges that the Act of 1840 as it regulated the subject of registration was never so limited in its operation as is contended for. Judge Wheeler wrote the first opinion in this court holding that the junior purchaser must show the payment of consideration and the absence of notice. Watkins v. Edwards, 23 Texas, 443. This was in a case in which the elder conveyance was executed in 1830 and the junior one in 1856. In Hawley v. Bullock, 29 Texas, 216, the conflict was between an unrecorded deed executed in 1835 and another executed in 1857. The same rule was declared, and has been followed in all other cases where the subject has been discussed, except in Crosby v. Houston and Kimball v. Oil Co. Beaty v. Whitaker, 23 Texas, 528; Mitchell v. Puckett, 23 Texas, 573; Martin v. Parker, 26 Texas, 262. These cases involved the question as to the merits of unrecorded deeds executed prior to the passage of the Act of 1840 as against others thereafter executed and the holding was uniform that the holder of the latter must show payment of a valuable consideration and absence of notice.

It is true that before the execution of the junior deeds involved in those cases the registration law of 1846 had been passed, but we can not see how it could have affected the decisions. It provided for the recording of all deeds, but contained no declaration of the rights of holders of unrecorded deeds as against junior purchasers. The rules upon that subject were not prescribed except by the Acts of 1836 and 1840. So that the decisions referred to mean, either that the quantum of evidence to be required of junior purchasers was the same under both statutes, or that the rule prescribed in 1840 required more than that previously existing. The latter view is adopted in Kimball v. Oil Co., and is insisted upon by counsel for appellees. If that holding were so extended as to apply in favor of junior purchasers whose claims originated after 1840, it would conflict with the other decisions referred to, since the law of 1840 is the only one that could be held to have changed the rule. The question has been presented with ability and learning, but we think there is no escape from the many decisions that have been made of the question; and, certainly, those decisions are not to be disturbed at this time after so many rights may have been acquired upon faith of them.

The first question does not relate to the admissibility of the mere fact of the existence of such a recital, as one of the circumstances, when circumstantial evidence is relied on to prove the fact of the

payment of a consideration in an ancient transaction after the deaths of all the parties to it. It presents the question whether or not the recital of such payment is admissible under the rule which admits declarations against interest of strangers to the action who are shown to be dead. If admissible on the principle invoked, the age of the transaction and the deaths of other parties than the grantor are unessential. Its admissibility would be the same if recently made, and although there were other persons having knowledge equal to his own. If such a declaration as this of one who has already conveyed his title to land is admissible against his grantee, any other declaration he might make apparently against his interest would be admissible after his death. The rule of evidence relied on is well sustained by the authorities, but no instance of such an application of it as is here contended for has been cited or found by us. In cases in this court too numerous to be mentioned it has been held without qualification that grantors will not be allowed to disparage titles after they have parted with them, and the rule that recitals in junior deeds are not evidence of the fact recited against grantees in senior ones from the same grantor, seems to be only an application of the principle. In one of the cases cited by Judge Wheeler in Watkins v. Edwards the rule is thus stated: "There was no proof whatever that Nolen had paid the purchase money specified in the deed to him, except the recitals in the deed. Are such recitals evidence against Connell, or those who claim under him? The rule, we think, is without exception, that the declarations or admissions of a vendor or assignor, made after the sale or assignment, are not evidence to defeat his vendee or assignee. A contrary rule would enable a vendor or assignor, after he had parted with all his interest, to defeat the title of his own purchaser. Now, the recitals in the deed from Simmons to Nolen, acknowledging the payment of the purchase money from Nolen, can be considered in no other light. Simmons had parted with all his interest in the land by his deed to Connell, and he therefore could make no admissions that would be binding on Connell or those who claim under him." (Nolen v. Gwyn, 16 Ala., 728.)

In Rogers v. Pettus, 80 Texas, 426, in support of the claim of innocent purchaser, the attention of the court was called by the brief of counsel for appellant to the fact that the time which had elapsed since the execution of the junior deed (about forty-eight years) created the presumption that the parties to it were dead, and yet the court held that the recital of the deed was no evidence of the payment of the consideration. In some other jurisdictions such recitals are held to be *prima facie* evidence, even as against strangers, of the payment recited; but the rule is different in this State, and we find no authority for such an exception to our rule, where it prevails, as is contended for. The argument is that the rule excluding such evidence is merely a rule of hearsay, and that the principle relied on takes declarations against interest of persons since deceased out of that rule; and that this recital was against Chirino's interest, because of its tendency to make him liable to Thouvenin on his warranty in case the deed to the latter failed. But the authorities exclude such

declarations as this when offered for the purpose of detracting from the title which the declarant has already conveyed to another and of sustaining subsequent conveyances of the same title. Nolen v. Gwyn, *supra*.

Another decision is the English case of Doe v. Webber, 3 Nev. & Man., 596, which decides the precise question. In that case a husband settled an estate on his wife and afterwards mortgaged it to secure money to be advanced to him. The report shows that he died before the controversy arose. In the suit between the widow and the mortgagor, the latter claimed to be an innocent purchaser without notice of the settlement, and offered acts and declarations of the deceased husband to show that he had received the money on the mortgage. These were held to be no evidence against the widow claiming under the prior conveyance. In the opinion of Lord Denman the reason is thus stated: "The evidence which has been given here consists, at the highest, of declarations by John Hill, and I take it to be clear upon general principle, that a person who has parted with all his interest can not by any declaration of his, subsequently made, derogate from the estate which he has conveyed; and that it is only by declarations made while the interest is in him, that he can bind those claiming under him." The other opinions in the case are based upon this reason, which is the same as that given by Chief Justice Dargan in Nolen v. Gwyn. It was as clearly against the apparent interest of the husband in that case to admit the receipt of the money and thereby charge himself with a debt as it was against that of Chirino in this to make a like admission; and an argument was based upon that fact, but was not allowed to prevail, Lord Denman remarking, in substance, that the real interest of the declarant could not be known.

It is urged that the declaration of Chirino is not offered in favor of one who is only his successor in title standing in the same predicament with him; but in favor of one who takes title, if at all, not from the mere force of the deed, but by force of the statute visiting upon the senior claimant the consequences of his failure to record his deed. But this assumes the very facts to be proved by the holder of the junior deed. He is in the same predicament with his grantor until he shows the facts essential to a better right, and the authorities referred to hold that the proof can not be made by the declaration of the grantor.

We therefore answer the first question in the negative.