## J. R. FOLKES ET AL. v. W. R. WYATT.

### Decided March 9, 1910.

**1.—Fraudulent Conveyance.**

The fact that a grantor who by deed exchanged his real property in Texas for other real estate in California had no other property in Texas at the time, does not, it seems,· establish his insolvency or that his conveyance was made to defraud creditors.

**2.—Same—Knowledge by Purchaser.**

The intent of a grantor to defraud creditors by his conveyance does not affect the title of his grantee who paid a valuable consideration without knowledge of such intent.

**3.—Attachment—Innocent Purchaser.**

Where a creditor attached and bought in land which his debtor had conveyed by deed prior to but recorded after the attachment levy, he acquired no title if he had knowledge of such conveyance before acquiring his attachment lien. Any one purchasing from him after the debtor's prior conveyance was recorded had the burden of proving that his grantor's attachment lien was acquired without notice of the conveyance in order to sustain his title against it.

**4.—Evidence—Notice.**

On the question whether an attaching creditor had notice or was put on inquiry as to the existence of a deed from the debtor unrecorded when the writ was levied it was proper to show that about a month before the deed was made such creditor was informed of the details of a pending trade to be closed by such conveyance from the debtor on his title being approved.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Eugene Williams, W. B. Carrington* and *Eason & Dilworth*, for appellants.—Black v. Vaughan, 70 Texas, 49, holds payment of any cash avoids sale of insolvent debtor. Ward v. Wofford, 26 S. W., 321, holds a purchaser chargeable with knowledge of debtor's insolvency is required to see that the money is applied to insolvent's debts. Proetzel v. Buck, S. & R. Co., 26 S. W., 1110, holds knowledge that by the sale the debtor would divest himself of all property save what was apparently exempt from execution, and payment to debtor of purchase money without seeing it was applied by him to the payment of his debts, made the sale, in the eye of the law, fraudulent and void as to creditors, although the purchaser might believe the debtor would apply the purchase money to liquidation of his debts. Paddock v. Jackson, 16 Texas Civ. App., 655, holds: "By the conveyance to Jackson, Ayres stripped himself of all his property within the reach of his creditors. . . . The necessary effect of this was to defraud his creditors. .. . . . The absence of a bad motive does not relieve the transaction of its fraudulent character. The parties are held to have contemplated the consequences of their act, and this constitutes the fraudulent intent which vitiates the conveyance. . . . The judgment will be reversed and here rendered in favor of appellants." Halff v. Goldfrank, 49 S. W., 1097; Stuart v. Smith, 21 S. W., 1027; Willis v. Yates, 12 S. W., 233; Lambeth v. McClinton, 65 Texas, 110; Ellis v. Valentine, 65 Texas, 543; Oppenheimer v. Halff, 68 Texas, 412; Seligson v. Brown, 61 Texas, 180; Elser v. Graber, 69 Texas, 225; Armstrong v. Elliott, 20 Texas Civ. App., 41; Williams v. Moore, 6 Texas Civ. App., 340. Parish v. Murphree, 13 Howard, 97, holds: "If a settlement be made without any fraudulent intent, yet if the amount thus conveyed impaired the means of the grantor so as to hinder or delay his creditor, it is to them void." Seger v. Thomas, 18 S. W., 33; First Nat'l Bank v. Fry, 115 S. W., 443; Bump on Fr. Con., 476.

The legal title of an attaching creditor is superior to the title of a person claiming under a prior unrecorded deed from the debtor. Hence a person who purchases this superior legal title for value, and without notice of facts which are sufficient to subordinate the legal title to the prior unrecorded deed, acquires a title superior to the title held under the prior unrecorded deed, even though the unrecorded deed be placed of record prior to the purchase; and the fact that the beneficial title may be in the person claiming under the unrecorded deed is immaterial. Sayles' Statutes, article 4640; Grace v. Wade, 45 Texas, 526; Turner v. Cochran, 94 Texas, 484; Barnett v. Squyres, 93 Texas, 193; Patty v. Middleton, 82 Texas, 591; Taylor v. Harrison, 47 Texas, 457; Laughlin v. Tips, 8 Texas Civ. App., 653; White v. McGregor, 92 Texas, 556; Fullenwider v. Ferguson, 30 Texas Civ. App., 156.

A bare recollection, called to the memory of a creditor at the time of his levy of an attachment on real estate, of long past negotiations between his debtor and a third party with reference to a sale of such real estate by his debtor to such third party, which negotiations were long afterwards, without notice of any character to the attaching creditor, consummated into a deed, duly executed and delivered but

not placed of record, is sufficient, as a matter of law, to constitute notice, either actual or constructive, to such attaching creditor of such outstanding unrecorded deed at the time of his attachment. Stanley v. Schwalby, 162 U. S., 255; Poling v. Williams, 46 S. E., 704; White v. McGregor, 92 Texas, 560; Moran v. Wheeler, 87 Texas, 184; Bell v. Riddle, 31 Texas Civ. App., 411; Eylar v. Eylar, 60 Texas, 319.

*E. S. Street,* for appellee.—That strangers to a contract can not take advantage of statute of frauds, see Gulf, C. & S. C. Ry. Co. v. Settegast, 79 Texas, 256; League v. Davis, 53 Texas, 14; Lee v. Wilmerding, 57 Texas, 444; Bringhurst v. Texas Company, 39 Texas Civ. App., 500.

The charge as requested was upon the weight of the evidence, and gave undue prominence to the facts therein recited, and was erroneous, and the court did not err in refusing to give same. Quinn v. Glenn Lumber Co., 118 S. W., 733; McKay v. Peterson, 52 Texas Civ. App., 195; Dupree & McCutchan v. Texas & P. Ry. Co., 96 S. W., 647; Medlin v. Wilkins, 60 Texas, 409; Houston & T. C. Ry. Co. v. Hodde, 42 Texas, 470.

One who purchases from an attaching creditor whose attachment is antedated by a deed recorded at the time of the purchase but unrecorded at the time of the levy of the attachment, must show that the creditor through whom he claims had no notice of the prior deed at the time of the levy of the attachment. L. & H. Blum Land Co. v. Harbin, 33 S. W., 153; Walker v. Downs, 64 S. W., 682; Illies v. Frerichs, 11 Texas Civ. App., 575; Watkins v. Edwards, 23 Texas, 443; Kimball v. Houston Oil Co., 100 Texas, 341; Ryle v. Davidson, 102 Texas, 227.

RICE, ASSOCIATE JUSTICE.—In August, 1907, W. F. McCormick owned certain real estate situated in Waco, consisting of a house and lot on Webster Street and three vacant lots, Nos. 8, 9 and 10 on Twelfth Street, the latter out of the Bagby addition; and the appellee Wyatt owned certain real estate in Los Angeles, California, and at that time they were both in California, and through one Whittenberg, a real estate agent, they began negotiations for an exchange of said properties, which was finally consummated on September 20, 1907, by an exchange of deeds. And in August, while all the parties were in California, Wyatt made and executed his deed conveying to McCormick the Los Angeles property, which, together with his abstract of title, was deposited in the First National Bank of Pasadena, to be delivered to McCormick in the event that his title to the Waco property should, upon examination, prove good, and at the same time both parties deposited in said bank $100 as a forfeit in the event they should fail to carry out their contract. It was understood between them that Whittenberg, who was returning to Waco, should have the title to the Waco property examined, and if found good, to draft a deed or deeds therefor, which should be returned to the bank at Pasadena for execution by McCormick; and the bank, upon his doing so, should deliver him the Wyatt deed to the California property and re-

turn to Wyatt the McCormick deed to the Waco property. In pursuance of this arrangement W. L. Eason, Esq., one of the appellants herein, who was an attorney at Waco, was employed and paid by Wyatt to pass upon the title to the Waco property, and upon examination reported the title good, whereupon the deeds were forwarded to the bank at Pasadena for execution by McCormick. It seems that prior to this time Eason, as attorney, had been employed by McCormick to bring suit for the Webster Street property, and also to procure a divorce for one Riddle, who had married the former wife of McCormick, and claimed for this service a balance due of $25; but it appears, we think, from the evidence that the $25 was in payment for services for the divorce suit, which at that time had not been filed, and was not, in fact, filed until December thereafter. Whittenberg, at the time that Eason was employed to examine the title to the Waco property, informed him of the trade then pending between appellee and McCormick, and the terms thereof, and we find that he understood that the exchange of properties would be made upon the title proving satisfactory. Eason informed Whittenberg of his claim for $25 against McCormick. McCormick owed Whittenberg commissions on the transaction, and there was evidence to the effect that McCormick was to pay certain taxes and other expenses.

It was finally agreed between Whittenberg and Eason, without McCormick's consent or knowledge, that, when the deeds were forwarded to the bank, they should also draw a draft against McCormick to cover Whittenberg's commissions and the expenses named, as well as the Eason fee, which it appears was done by Whittenberg. McCormick, who was not a party to this arrangement, declined however to pay the draft so drawn, on the ground that Eason's fee was not due, as the divorce suit had not been filed; and further objected to certain items of the expense bill of Whittenberg, of which facts Eason was apprised, both by Whittenberg and through a letter to him from McCormick. Finally Whittenberg notified Eason that he did not intend to allow the trade to fall through on account of his claim, and directed the bank to deliver the deed upon McCormick's paying his charge for commissions, taxes, etc., deducting certain items of expenses, as well as the Eason claim, which being done, the deed was, on the 20th of September, 1907, duly executed and delivered to the bank by McCormick for Wyatt, and Whittenberg and Wyatt notified thereof. *There is testimony to the effect that Eason was also notified of the execution by McCormick of said deed.* Thereafter, on October 7, 1907, Eason sued McCormick in the Justice's Court at Waco for $25, and on the same day had issued and levied an attachment on said three vacant lots in controversy as the property of McCormick. On January 13, 1908, Eason recovered judgment in said court against McCormick; and on February 7, 1908, an execution was duly issued thereon, and on March 3d thereafter said lots were sold by the constable and bought in by Eason, and on March 7, 1908, Eason conveyed to Folkes one and one-half of said lots.

*There is evidence showing that soon after the execution of the deed by McCormick to Wyatt that he moved into the house on Webster Street, and likewise took possession of the vacant lots by repair-*

*ing the fence and putting up a sign that the same were for sale; and while it is admitted by Eason that he had knowledge of Wyatt's possession and occupancy of the Webster Street property at the time the attachment was sued out, yet he denied knowledge of Wyatt's possession of the vacant lots.*

Wyatt's deed was executed on September 20, 1907, but was not recorded until November 19, 1907. This suit was brought by Wyatt against Folkes and Eason in an action of trespass to try title for the recovery of said three vacant lots, and likewise to remove cloud cast upon the title thereto by said constable deed.

Eason disclaimed as to the lot and a half sold by him to Folkes, and by plea of not guilty as to the remaining lot and a half, and Folkes disclaimed as to the lot and a half still claimed by Eason, and answered by a plea of not guilty as to the remaining lot and a half; and both likewise prayed that the cloud cast on the title to their respective lots by the McCormick deed be removed.

There was a jury trial and verdict and judgment in favor of Wyatt, from which appellants prosecute this appeal.

By their first five assignments of error appellants present, in different phases, the contention that the deed from McCormick to Wyatt was fraudulent and void as to Eason, who was a creditor of McCormick, and for which reason they were entitled to recover; and this contention is predicated upon our statute, article 2544, which provides that: "Every gift, conveyance, assignment or transfer of, or charge upon any estate, real or personal, every suit commenced, or decree, judgment or execution suffered or obtained, and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

So that for appellants to recover it must appear, not only that the conveyance was made by McCormick with intent to delay, hinder or defraud Eason, but, since it is conclusively shown that a valuable consideration was paid for said lots by Wyatt, it must further appear that he had notice of such fraudulent intent on the part of McCormick. We think the evidence fails to establish that the conveyance was made by McCormick with intent to hinder, delay or defraud his creditors; and, certainly, there is no evidence in the record showing or tending to show that appellee had any notice of any such fraudulent intent, even if any such existed, and without which appellants' contention, it seems to us, must fail. It is true that appellee knew of Eason's claim against McCormick; and while there is an agreement in the record to the effect that McCormick had no other property in Texas than the lots sold Wyatt, still this does not establish his insolvency. Besides, it appears that he was obtaining valuable property in California by the exchange; and the evidence further fails to show that Wyatt knew that this was the only property possessed by him in the State. But, even if it were conceded that McCormick was

insolvent (which we think the record fails to show) yet it has been held, as shown by the syllabus in Cox v. Morrison, 31 S. W., 85, that insolvency of a vendor at the time of a sale will not defeat title of a vendee purchasing for a valuable consideration, without notice of the vendor's insolvency.

Believing that these assignments are not sustained by the record, the same are overruled.

With reference to the claim of appellant Folkes, it is urged that the court erred in failing and refusing to give in charge to the jury special charge No. 1, which reads as follows: "The uncontradicted evidence shows that at the time the defendant Eason conveyed to the defendant Folkes the lot and one-half described in the answer of the defendant Folkes, that the defendant Eason had the superior record title to said lot and one-half, and that the defendant Folkes had no knowledge of any facts that would render the legal title acquired by him inferior to the title of the plaintiff. You will therefore find in favor of the defendant Folkes for the lot and one-half described in his answer." And by his proposition thereunder insists that the legal title of an attaching creditor is superior to the title of a person claiming under a prior unrecorded deed from the debtor. Hence a person who purchases this superior legal title for value, and without notice of facts which are sufficient to subordinate the legal title to the prior unrecorded deed, acquires a title superior to the title held under the prior unrecorded deed, even though the unrecorded deed be placed of record prior to the purchase; and the fact that the beneficial title may be in the person claiming under the unrecorded deed is immaterial.

Appellee, however, by his counter-proposition, contends that one who purchases from an attaching creditor whose attachment is antedated by deed recorded at the time of the purchase, but unrecorded at the time of the levy of the attachment, must show that the creditor through whom he claims had no notice of the prior deed at the time of the levy of the attachment. It will be remembered that the deed from McCormick to Wyatt is dated September 20, 1907, and is recorded November 19, 1907, and that Eason's attachment on the lots in controversy was levied October 7, 1907. It was agreed in writing that the defendant Folkes was a purchaser in good faith and for value, and without any notice of Wyatt's claim, save and except such as was imputed to him by reason of the record of the Wyatt deed. The deed to Folkes is dated March 7, 1908.

We are inclined to think that the record of the Wyatt deed was sufficient notice to Folkes, who bought thereafter, and that the contention of appellee should be sustained. In Walker v. Downs, 64 S. W., 682, it is said, as shown by the syllabus, "where in trespass to try title it is shown that a defendant's unrecorded deed was executed prior to the title asserted by plaintiff, which was obtained through execution sale, plaintiff can not overturn the defendant's title in the absence of a showing that his lien was acquired without notice of defendant's claim to the property."

In Watkins v. Edwards, 23 Texas, 443, it is held that, to postpone a prior unregistered conveyance in favor of a subsequent vendee, it

must appear that he had bona fide paid the purchase money, and had neither actual nor constructive notice of the title of the prior vendee. See also Blum Land Co. v. Harbin, 33 S. W., 153; Illies v. Frerichs, 11 Texas Civ. App., 575, 32 S. W., 915; Kimball v. Houston Oil Co., 100 Texas, 341; Ryle v. Davidson, 102 Texas, 227, 115 S. W. 28. It is evident that the jury found that Eason, the attaching creditor, under the charge of the court had notice of appellee's unrecorded deed at the time he levied his attachment; and, since Folkes purchased after the deed was recorded, it must be held that he had constructive notice thereof. Therefore the court, in our judgment, did not err in refusing to give the charge requested, and this assignment is overruled.

During the progress of the trial, over objection of appellants, Whittenberg was permitted to testify that, upon his return from California in August, 1907, he told Eason of the exchange of properties between Wyatt and McCormick, and likewise told him of the execution by Wyatt of the deed and the depositing of the same, together with the abstract and the forfeits by both parties in the Pasadena bank, and that if the title was good to the Waco property, that he was to draft deeds and send them to McCormick for execution. This evidence, in our judgment, bore directly upon the issue as to whether or not appellant Eason, on October 7, 1907, the date of the levy of his attachment, knew that the property in controversy had been conveyed prior thereto to appellee, or whether he had notice of such facts as would put a prudent person upon inquiry, and for which reason the same, in our opinion, was admissible. The assignment presenting this question is, therefore, overruled.

We think the evidence is sufficient to support the verdict, and therefore overrule the remaining assignment challenging its sufficiency in this respect.

Finding no error in the judgment of the trial court, the same is in all things affirmed.

*Affirmed.*

Writ of error refused.